HELENE N. WHITE, Circuit Judge, dissenting. Because Miller’s case presents a “rare” circumstance in which Rule 60(b)(6) reliéf is appropriate in a habeas proceeding, cf. Gonzalez v. Crosby, 545 U.S. 524, 535, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005), I respectfully dissent. Relief under Rule 60(b)(6) is available only in “exceptional or extraordinary circumstances where principles of equity mandate relief.” West v. Carpenter, 790 F.3d 693, 696-97 (6th Cir. 2015) (citation omitted). As the majority observes, a “change in decisional law is usually not, by itself, an ‘extraordinary circumstance’ meriting Rule 60(b)(6) relief,” Stakes v. Williams, 475 F.3d 732, 735 (6th Cir. 2007) (citation omitted), and this court has held that Martinez/Trevino, by themselves, are not “extraordinary” in the Rule 60(b)(6) context, see Henness v. Bagley, 766 F.3d 550, 557 (6th Cir. 2014). Further, determining whether a circumstance presented in a 60(b)(6) motion is “exceptional or extraordinary” involves a “case-by-case inquiry .... [that] intensively balance[s] numerous factors, including the competing policies of the finality of judgments and the incessant command of the court’s conscience that justice be done in light of all the facts.” West, 790 F.3d at 697 (citation omitted). Whether a- habeas petitioner presents “extraordinary” circumstances is determined partly in view of how diligent he was in seeking Rule 60(b)(6) relief after a change in decisional law. See Gonzalez, 545 U.S. at 537, 125 S.Ct. 2641; see also Fed. R. Civ. P. 60(c)(1) (a movant must file his motion “within a reasonable time”); I consider these same balancing factors but reach a different conclusion: that the equities weigh heavily in favor of Miller, and accordingly that- the district court abused its discretion in denying him relief under Rule 60(b)(6). (1) Diligence As the majority explains, we examine the time between the date of the decision constituting a change in law and the date the Rule 60(b)(6) motion was filed. Maj. Op. at 699. Eighteen months elapsed between the Supreme Court’s decision in Martinez v. Ryan, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012) on March 20, 2012 and Miller’s filing of his 60(b)(6) motion on September 20, 2013. Alternatively, the majority reasons that sixteen months elapsed between Mariinez and the 60(b)(6) motion, deducting the two months between this court’s decision in Hodges v. Colson, 711 F.3d 589, 612 (6th Cir. Mar. 26, 2013) (which cast doubt on Martinez’s application in Tennessee) and the -Supreme Court’s decision in Trevino v. Thaler, 569 U.S. 413, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013) (which was decided on May 28, 2013 and extended Martinez’s equitable holding to states that make it “virtually” impossible to bring an ineffective-assistance claim on direct appeal). Trevino, 569 U.S. at 417, 133 S.Ct. 1911. It is this sixteen-month period that the majority “cannot excuse,” especially in light of cases in which twelve and eight months between a change in law and the filing of a 60(b)(6) motion showed, respectively, diligence arid a lack thereof. Maj. Op. at 700-01 (citing Wright v. Warden, Riverbend Maximum Sec. Inst. 793 F.3d 670, 672 (6th Cir. 2015) and Gonzalez, 545 U.S. at 537, 125 S.Ct. 2641). We found the petitioner in Wright was diligent in filing his 60(b)(6) motion twelve months after Martinez was decided (but months before Trevino was). 793 F.3d at 672. Although Wright may have been diligent in pressing his Martinez, claim, as a Tennessee petitioner, that claim was not available to him at that time. The Supreme Court drew a clear line in Martinez, stating that it was recognizing only a “narrow exception” to the rule of Coleman v. Thompson, 501 U.S, 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), that ineffective assistance of post-conviction counsel is not cause to excuse a procedural default. 566 U.S. at 9, 132 S.Ct. 1309. This narrow exception applied only “where the State barred the defendant from raising [ineffective-assistance] claims on direct appeal.” Id. at 17, 132 S.Ct. 1309 (emphasis added). Martinez did not apply nationwide, only to states that placed claims of ineffective assistance outside the direct-appeal process. We observed in our first Hodges opinion that “Tennessee’s system does not implicate the same concerns as those that triggered the rule in Martinez because in Tennessee a collateral proceeding is not ‘the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial.’ ” 711 F.3d at 612 (quoting Martinez, 566 U.S. at 8, 132 S.Ct. 1309). It was not until Trevino was decided on May 28, 2013 that the narrow Martinez exception to Coleman was extended to cover states that allow a prisoner to raise a claim of ineffective assistance on direct appeal but do not provide defendants with a “meaningful opportunity to present” that claim. Trevino, 569 U.S. at 428, 133 S.Ct. 1911. Indeed, despite Wright’s diligence in raising his Martinez claim, if we had decided the merits and had only Martinez (and not Trevino) to follow, we would have been bound to hold that Tennessee is not covered by Martinez. In other words, absent the intervening decision Trevino, the diligence of the petitioner in Wright could not have mattered because he would have had no applicable change in law to rely on. The same goes for Miller. We cannot expect habeas petitioners to be diligent in bringing futile motions. This is all to say that I disagree with the majority that Martinez’s date of decision is the proper point from which to measure whether Miller was diligent in filing his 60(b)(6) motion. Instead, the proper starting point is Trevino, decided the same day the Court denied Miller’s petition for cer-tiorari. Trevino extended Martinez to apply to “a State that in theory grants permission [to bring an ineffective-assistance claim on direct appeal] but, as a matter of procedural design and systemic operation, denies a meaningful opportunity to do so.” 569 U.S. at 429, 133 S.Ct. 1911. That was a holding applicable to Tennessee, as we implicitly recognized when we amended Hodges to remove the suggestion that Martinez was inapplicable to Tennessee convictions. 727 F.3d 517 (6th Cir. Aug. 14, 2013). Under the circumstances, Miller’s filing his 60(b)(6) motion just shy of four months after Trevino was diligent. (2) Finality I agree with the majority that Tennessee has a strong finality interest in its criminal judgment, and agree as well that this interest must be balanced against Miller’s interest in avoiding the “more irreversible finality of [his] execution.” Maj. Op. at 701 (quoting Wright, 793 F.3d at 673). See Calderon v. Thompson, 523 U.S. 538, 556, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998) (“A State’s interests in finality are compelling when a federal court of appeals issues a mandate denying federal habeas relief.”); but see Sanders v. United States, 373 U.S. 1, 8, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) (“Conventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged.”). The majority emphasizes that Miller has had multiple opportunities, in state and federal proceedings, to obtain review of his conviction and sentence; and although his ineffective-assistance claim has never been addressed on the merits, this is a consequence of his procedural default of the issue. But not all defaulted claims are equal. It matters that counsel’s ineffectiveness goes to the heart of the jury’s decision to impose a death sentence, and, as I discuss below, that Miller’s claim is a substantial one. At re-sentencing, the paramount defense objective was to avoid the imposition of the death penalty. Mitigating evidence show-mg that Miller suffered from mental illness, trauma, or organic brain damage was the most “significant factor” in arguing in favor of that objective, and expert mental-health assistance was needed to evaluate, prepare, and present it. The state’s interest in the finality of its judgments must be “tempered by its interest in the fair and accurate adjudication of criminal cases.” Cf. id. at 7-9. Here, if Miller’s “interest in avoiding the death penalty” cannot be said to “overcome the [state’s] finality interests at stake,” Maj. Op. at 701-02, it also cannot be said that the latter overcomes the former. The interests are at least in equipoise. (3) Merits I join the majority in assuming that consideration of the merits is appropriate, and, for the same reasons set out in the majority opinion, I agree that trial counsel Olive’s “failure to engage any expert in support of Miller’s case for mitigation” is inexcusable. Id. at 703. I respectfully disagree, however, with the conclusion that Olive’s ineffectiveness did not prejudice Miller. Had Olive obtained the assistance of a mental-health expert, whether neutral or independent, there was a “reasonable probability ... that the [jury] would have concluded that the balance of aggravating and mitigating factors did not warrant death.” Strickland v. Washington, 466 U.S. 668, 695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This probability is sufficient to “undermine confidence in the outcome” of Miller’s re-sentencing. Id. at 694, 104 S.Ct. 2052. In finding a lack of prejudice, the majority asserts that the lay witnesses’ mitigation testimony at re-sentencing did not vary in a substantial way in strength and subject matter from the evidence Miller now offers in the form of declarations by Drs. Stewart, Hyde, and Lisak. I disagree. The evidence given by lay witnesses was “troubled youth” testimony, including that Miller was neglected and physically abused by his parents. At most, these lay witnesses could support that Miller’s background drove him to substance abuse. The lay witnesses were not equipped to analyze Miller’s school, child protective services, medical, or penal records. Nor could the lay testimony address Miller’s psychological problems or organic brain damage. In contrast, Dr. Hyde, a neurologist, examined Miller and found that he suffered from developmental or acquired frontal-lobe dysfunction, which can cause individuals to “have difficulty with impulse control, prioritization, judgment, reasoning, and anger management.” Hyde Decl. at 5. Dr. Hyde also noted that Miller had an extensive history of bipolar disorder, which made him “particularly susceptible to impulsive and inappropriate behavior under periods of emotional distress[,]” and that Miller’s substance abuse was likely an attempt at self-medication. Id. at 5-6. As the three declarations Miller obtained for his federal habeas petition show, an expert could have explained to the jury how Miller’s traumatic childhood affected him psychologically and neurologically and influenced him to murder Standifer in a violent rage. The lay witnesses were of no help on this issue. The expert testimony is substantially different in strength and subject matter, and “[t]here is reason to think that” “access to the type of meaningful assistance in evaluating, preparing, and presenting the defense that Ake requires would have mattered.” McWilliams v. Dunn, — U.S. —, 137 S.Ct. 1790, 1801, 198 L.Ed.2d 341 (2017). Further, although Olive did argue that Miller was the victim of sexual abuse as a young adult at the hands of a clergyman, he completely failed to inform the re-sentencing jury about the prolonged sexual abuse Miller was subjected to by his own mother, which Dr. Lisak opined caused “rage that stemmed from the confluence of his step-father’s brutality, and his mother’s incestuous abuseLisak Deck at 27. Miller committed the sudden, brutal, murder of a female intimate partner. There is reason to think that the jury would have viewed this crime differently had Miller been examined by a competent expert who could explain that it was influenced by childhood abuse that left him with “untreated, profound levels of rage that he directed at women.” Id. Further, when Miller’s mother was cross examined about what the majority acknowledges was “a serious untreated head injury,” Maj. Op. at 705, she agreed with the government that Miller “didn’t receive any serious injuries from that episode.” Resentencing Tr. at 636. Expert testimony would have made the serious nature of the' injuries clear. The majority finds support in Landrum v. Mitchell, 625 F.3d 905 (6th Cir. 20Í0), for its conclusion that Miller was not prejudiced because the mental-health experts supporting his federal habeas petition do not present evidence that “differs significantly both in strength and subject matter from the evidence actually presented at sentencing,” Id. at 933. But Miller’s case is far different from 'Landrum. In Landrum, we concluded that defense counsel was not ineffective. Counsel obtained funds for a psychologist, had her examine Landrum, and made the strategic decision not to present her testimony. Id. at 932. Here, defense counsel obtained no expert mental-health 'assistance on the mitigation issue at all, and we have concluded that he was ineffective. Further, the evidence of prejudice that Landrum obsérved was absent in that case is present here. Cf. id. at 933 (“In Landrum’s case, nothing in the post-conviction record suggests that his childhood was drastically different from what the jury heard or that hé suffers from a mental or physical condition that would explain or significantly mitigate his crimes.”). The opinions of the post-conviction experts here do suggest that Miller’s mental and neurological conditions would explain and significantly mitigate his crime. In sum, Miller’s post-conviction experts show the types of mitigating evidence that Olive could have uncovered had he sought the expert mental-health assistance— whether independent or neutral—that Miller was entitled to at his re-sentencing. Had the jury heard such evidence, there is a reasonable probability that it would have concluded that “the balance of aggravating and mitigating circumstances did not warrant death.” See Strickland, 466 U.S. at 695, 104 S.Ct. 2052. * * * Miller diligently brought, his Rule 60(b)(6) motion less than four months after Trevino was decided. Both Miller and the State of Tennessee have considerable finality interests—Miller in avoiding the judgment of a death sentence and the state in enforcing it. Miller raises a substantial ineffective-assistance claim that his trial counsel was ineffective for failing to seek any expert mental-health assistance at re-sentencing, and has shown that there is a reasonable probability that this failure prejudiced him. Together, these factors give rise to the “exceptional or extraordinary circumstances where principles of equity mandate relief’ under Rule 60(b)(6). West, 790 F.3d at 697 (citation omitted). I would reverse the district court’s denial of this relief.