RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0150p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

CHARLES WALTON WRIGHT,

*Petitioner-Appellant,*

*v.*

No. 13-6573

WARDEN, RIVERBEND MAXIMUM SECURITY
INSTITUTION,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:99-cv-00997—William J. Haynes, Jr., District Judge.

Argued: June 17, 2015

Decided and Filed: July 15, 2015

Before: COLE, Chief Judge; ROGERS and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Kelley J. Henry, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Jennifer L. Smith, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee. **ON BRIEF:** Kelley J. Henry, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Jennifer L. Smith, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee.

_____

## OPINION

_____

PER CURIAM. Charles Walton Wright, a Tennessee death row inmate represented by counsel, appeals from a federal district court order denying his Federal Rule of Civil Procedure 60(b)(6) motion for relief from judgment. Wright argues that a change in law—the Supreme Court's decisions in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct.

1

1911 (2013)—combined with various equitable factors justify disturbing a 2007 judgment denying his habeas petition. Wright's motion fails because *Martinez* and *Trevino* are not an extraordinary circumstance requiring Rule 60(b)(6) relief, *McGuire v. Warden*, 738 F.3d 741, 750 (6th Cir. 2013), and the other equitable arguments that he advances in support of his motion are not compelling.

Thirty years ago in April 1985, a Tennessee state jury convicted Wright of two counts of pre-meditated murder in the first degree for the shooting deaths of Gerald Mitchell and Douglas Alexander. Wright was sentenced to life imprisonment for killing Mitchell and sentenced to death for Alexander's murder. The Tennessee Supreme Court affirmed Wright's convictions and sentences on direct appeal. *State v. Wright*, 756 S.W.2d 669, 677 (Tenn. 1988).

Three sets of state post-conviction proceedings followed. In May 1989, Wright, acting pro se, filed a petition for post-conviction relief in the trial court. Counsel was appointed, and an amended petition was filed. The trial court conducted an evidentiary hearing and subsequently denied relief. The Tennessee Court of Criminal Appeals affirmed the decision. *Wright v. State*, No. 01C01-9105-CR-00149, 1994 WL 115955, at *10-*14, *22 (Tenn. Crim. App. Apr. 7, 1994). During the appeal from the denial of the first post-conviction petition, Wright, again acting pro se, filed a second post-conviction petition, which was denied without a hearing. Wright did not appeal that decision. In January 1995, Wright, acting through counsel, filed a third petition for post-conviction relief. The trial court denied relief, and that decision was affirmed on appeal. *Wright v. State*, No. 01C01-9506-CR-00211, 1997 WL 126818, at *9 (Tenn. Crim. App. Mar. 20, 1997), *aff'd*, 987 S.W.2d 26, 30 (Tenn. 1999).

In October 1999, Wright, acting pro se, filed a petition for a writ of habeas corpus in federal district court. The district court subsequently appointed counsel for Wright and, in June 2000, Wright filed an amended petition. The warden moved for summary judgment. The court partially granted the warden's motion. After an evidentiary hearing, the court denied habeas corpus relief for the remaining claims. This court affirmed that decision. *Wright v. Bell*, 619 F.3d 586, 604 (6th Cir. 2010) ("*Wright I*").

In March 2013, Wright moved in the district court for relief from judgment under Rule 60(b), asserting that *Martinez,* a 2012 Supreme Court decision, changed the law of procedural

default such that, if his case were reopened, the district court could reach the merits of claims previously dismissed as procedurally defaulted. The district court closed the action without prejudice until the Supreme Court's issuance of *Trevino*. Wright's initial motion to reopen the case was denied because he failed to identify which claims he sought to reopen. Wright renewed the motion, identifying the claims for which he was seeking relief. The district court denied Wright's renewed Rule 60(b)(6) motion. After filing a notice of appeal from that decision, Wright unsuccessfully moved to amend or correct that order and filed a notice of appeal from that order. The district court granted Wright a certificate of appealability on the issue of Rule 60(b)(6) relief. Wright appeals.

Rule 60(b)(6) relief is available only in "exceptional or extraordinary circumstances," *Stokes v. Williams*, 475 F.3d 732, 735 (6th Cir. 2007), and Wright has not demonstrated that such circumstances are present here. Wright relies heavily on *Martinez* and *Trevino*, but "neither *Martinez* nor *Trevino* sufficiently changes the balance of the factors for consideration under Rule 60(b)(6) to warrant relief." *Henness v. Bagley*, 766 F.3d 550, 557 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 1708 (2015). Changes in decisional law are usually not an extraordinary circumstance. This court has held that *Martinez* and *Trevino* are not an exception to that general principle because those decisions were "not a change in the constitutional rights of criminal defendants, but rather an adjustment of an equitable ruling by the Supreme Court as to when federal statutory relief is available." *McGuire*, 738 F.3d at 750–51. *Thompson v. Bell*, 580 F.3d 423 (6th Cir. 2009), a case cited by Wright, does not change this analysis. In *Bell*, the petitioner relied on a change in state law, rather than federal law, which this court held to constitute an "extraordinary circumstance" warranting Rule 60(b)(6) relief "because refusing to recognize [the change in state law] 'would *disserve* the comity interests enshrined in AEDPA by ignoring the state court's view of its own law.'" *Id.* at 443 (quoting *In re Abdur'Rahman*, 392 F.3d 174, 187 (6th Cir. 2004)).

Even considering the change in law alongside Wright's other arguments in equity, Wright has not shown the presence of extraordinary circumstances which would mandate relief. Other than the change in law, the only circumstance appearing to favor Rule 60(b)(6) relief is Wright's diligence in pursuing his *Martinez* claim. Wright's diligence alone, while a factor to be considered, is not enough to demonstrate extraordinary circumstances in light of the other factors

that counsel against Rule 60(b)(6) relief, most notably the "public policy favoring finality of judgments and termination of litigation." *McGuire*, 738 F.3d at 750.

The state of Tennessee has an interest in the finality of its judgments, which in this case were first issued long ago and have been extensively litigated ever since. Twenty-five years passed between the Tennessee Supreme Court's affirmance of Wright's conviction and sentence and Wright's filing of the Rule 60(b) motion. Nearly twenty years passed between the Tennessee Court of Criminal Appeals' denial of his first state post-conviction challenge and Wright's filing of the Rule 60(b) motion. Of course, the Supreme Court has stated that "[c]onventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged." *Thompson*, 580 F.3d at 444 (quoting *Sanders v. United States*, 373 U.S. 1, 8 (1963)). Thus, we have recognized that "the finality of the judgment against [the petitioner] must be balanced against the more irreversible finality of his execution." *Id.*

The federal courts also have an interest in the finality of their judgments. "[N]ot every interpretation of the federal statutes setting forth the requirements for habeas provides cause for reopening cases long since final." *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005). Six years passed between the district court's order denying Wright's habeas petition and Wright's Rule 60(b) motion seeking relief from that order.

This case has been thoroughly litigated in the state and federal courts. *See McGuire*, 738 F.3d at 749. Indeed, Wright's case has been before the United States Supreme Court four separate times: after his initial conviction and sentence, *Wright v. Tennessee*, 488 U.S. 1034 (1989); after his first state post-conviction petition, *Wright v. Tennessee*, 513 U.S. 1163 (1995); after his third state post-conviction petition, *Wright v. Tennessee*, 528 U.S. 828 (1999); and after his first federal habeas petition, *Wright v. Bell*, 132 S. Ct. 127 (2011). Each time, the Supreme Court declined review.

Wright has had his day in court. Over the past thirty years, the courts have considered and rejected Wright's claims, including the claim his appeal highlights: an ineffective-assistance-of-counsel claim for failure to investigate and present personal history mitigation at sentencing. Also important is the weakness of Wright's underlying claim. *See Gonzalez*, 545 U.S. at 534;

*see also Martinez*, 132 S. Ct. at 1318.  As this court originally explained in affirming the district court's denial of habeas relief, Wright's trial counsel was not ineffective in investigating and presenting Wright's personal history:

> [N]othing in the additional declarations presented by Wright's family members renders the state court's determination unreasonable, or contrary to clearly established federal law. The decision not to call any family members other than Wright's mother was made after a reasonable investigation, including extensive contact with Wright's family members. Critically, Wright never alleges that his attorneys failed to speak to Rose Wright, and her declaration states only that she would have testified if asked. Rose Wright's testimony would have painted a much more vivid picture of the tragic circumstances of Wright's family life; however, Wright's mother testified as to Wright's impoverished upbringing, and the most vivid images from Rose Wright's testimony, those of criminal neglect and sexual abuse, concern Wright's sisters, rather than Wright himself.

*Wright I*, 619 F.3d at 597.  Considering all of these factors together, equity weighs against reopening Wright's case.  The district court's denial of Wright's Rule 60(b)(6) motion was not an abuse of discretion.

We do not dispose of this appeal on the simple basis that an application of *Martinez* and *Trevino* would make no difference in light of our alternative holding in *Wright I*.  In *Wright I* we held that the claim underlying this appeal—that counsel ineffectively failed to obtain and present important mitigating evidence regarding his childhood—was procedurally defaulted.  *Id.* at 598. Wright now challenges that procedural default determination on the basis of *Martinez* and *Trevino*.  But in *Wright I* we added in the alternative that the argument was without merit.  *Id.* This is likely the law of the case, or at least an independent compelling reason to conclude that there is no warrant under Rule 60(b)(6) to undo the finality of the judgment.  Strikingly, the warden did not make this argument in the briefs, and Wright accordingly did not address it in his briefing.  For that reason, we do not rely solely upon that alternative holding in *Wright I* to uphold the denial of Rule 60(b)(6) relief.

The judgment of the district court is affirmed.