RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0006p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

DAVID E. MILLER,

        *Petitioner-Appellant,*

*v.*

    No. 14-6445

TONY MAYS, Warden,

        *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:01-cv-00487—Robert Leon Jordan, District Judge.

Argued: November 30, 2016

Decided and Filed: January 9, 2018

Before: SILER, GIBBONS, and WHITE, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Stephen M. Kissinger, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. Jennifer Lynn Smith, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee. **ON BRIEF:** Stephen M. Kissinger, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. Jennifer Lynn Smith, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee.

    GIBBONS, J., delivered the opinion of the court in which SILER, J., joined. WHITE, J. (pp. 18–23), delivered a separate dissenting opinion.

---

**OPINION**

---

JULIA SMITH GIBBONS, Circuit Judge.  David Miller was convicted and sentenced to death for the 1981 murder of Lee Standifer.  His sentence was upheld by the Tennessee Supreme Court and we affirmed the dismissal of his § 2254 *habeas* petition.  Seeking to revisit his ineffective-assistance-of-trial-counsel (IATC) claim in light of *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), Miller now appeals the district court's denial of his motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(6).  For the reasons that follow, we affirm the decision of the district court.

I.

A.

We previously reviewed the facts underlying Miller's conviction in *Miller v. Colson*, 694 F.3d 691 (6th Cir. 2012).  As relevant here, Lee Standifer was murdered in Knoxville, Tennessee, on May 20, 1981.  *Id.* at 693.  She was stabbed with a large knife and a fireplace poker, bound with a rope, and dragged into a wooded area.  *Id.*  The evidence at trial established that Miller and Standifer had been on a date that night.  *Id.*  At some point, they returned to the home of Benjamin Thomas, where Miller was staying.  *Id.*  When Thomas returned home, he found Miller cleaning the basement floor, found streaks of blood inside the house, and later found Standifer's body in his backyard along with a blood-stained t-shirt belonging to Miller.  *Id.*  Miller was arrested and, after waiving his *Miranda* rights, admitted to hitting Standifer with his fist and dragging her outside.  *Id.*

On June 11, 1981, Miller was examined by Dr. George Gee, a psychiatrist at the Helen Ross McNabb Mental Health Center.  *Id.* at 694 n.1.  In a written evaluation, Gee described Miller as "sociopathic but certainly mentally competent to stand trial." *Id.*

Miller was subsequently indicted for Standifer's murder.  *Id.* at 693.  The trial court granted Miller's motion for a second psychiatric examination in order to determine his

competency to stand trial. *Id.* The court instructed Gee to determine both Miller's mental state at the time of Standifer's death and whether he was currently competent to stand trial. *Id.* at 693–94. After again examining Miller, Gee issued a letter stating that Miller's affect and thought processes were normal and that he did not believe Miller was insane at the time of the offense. *Id.* at 694. Prior to trial, Miller requested that the trial court appoint a psychiatrist to assist in the preparation of his defense. *Id.* The court denied the motion, finding Miller was not entitled to a second expert. *Id.* Miller was convicted of first-degree murder and sentenced to death. *Id.*

Miller appealed his conviction and sentence, arguing, in part, that the trial court erred by refusing to provide him with an independent psychiatrist. *Id.* The Tennessee Supreme Court affirmed Miller's conviction but remanded the case for resentencing because the State had impermissibly introduced evidence of prior arrests during the sentencing phase. *Id.* On remand, Miller renewed his motion for a new trial, arguing that the trial court's refusal to grant him the assistance of a psychiatric expert during the guilt phase violated his due-process rights in light of the then-recent decision in *Ake v. Oklahoma*, 470 U.S. 68 (1985). *Miller*, 694 F.3d at 694–95. The trial court denied the motion without explanation and a second jury sentenced Miller to death. *Id.* The Tennessee Supreme Court affirmed. *Id.* Miller's request for state post-conviction relief was also denied. *Miller v. State*, 54 S.W.3d 743 (Tenn. 2001).

B.

In May 2002, Miller filed a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254, raising twenty-five grounds for relief. Miller's thirteenth claim alleged that he had received ineffective assistance of counsel at resentencing because his attorneys failed to investigate mitigating evidence and failed to retain competent mental-health experts to diagnose Miller and explain how his mental disorders led to Standifer's death. The district court found this claim procedurally defaulted because Miller had failed to raise it during state post-conviction proceedings and had not shown cause and prejudice to excuse the default. On appeal, we did not consider this IATC claim because there was not a certificate of appealability (COA) on the issue. *See Miller*, 694 F.3d at 701. We considered only whether denying state funds for an independent mental-health expert during the guilt phase of Miller's trial violated *Ake v. Oklahoma* and

whether the jury instructions at trial were proper.  *Id.* at 696–701.  Finding no error, we affirmed.  *Id* at 701.[1]

C.

In September 2013, Miller filed a motion for relief from judgment under Rule 60(b)(6).  He argued that the procedural default of his IATC claim could now be excused under *Martinez*, 566 U.S. at 1, *Trevino*, 569 U.S. at 413, and *Hodges v. Colson*, 727 F.3d 517 (6th Cir. 2013), because he had presented a substantial claim of ineffective assistance of trial counsel, because post-conviction counsel was ineffective for failing to raise this claim, and because the balance of equities favored a federal merits-based review of his claim.

The district court denied Miller's motion, finding that he had not shown sufficient extraordinary circumstances to merit relief.  The district court first recognized that our decision in *McGuire v. Warden, Chillicothe Correctional Institution*, 738 F.3d 741, 750 (6th Cir. 2013), established that *Martinez* and *Trevino*, alone, do not constitute extraordinary circumstances for the purposes of Rule 60(b)(6).  The court noted that *Martinez* and *Trevino* did not change the constitutional rights of criminal defendants but rather impacted access to federal statutory relief.

The district court then considered whether other equitable factors, on balance, favored Miller's request for Rule 60(b)(6) relief.  First, the district court recognized that although Miller had presented new evidence in the affidavit submitted by John Halstead, Miller's post-conviction counsel, the affidavit of Mark Olive, Miller's counsel at resentencing, was substantially similar to the testimony Olive had previously presented in connection with Miller's § 2254 petition.  Second, the court held that policy considerations, including the finality of judgments, did not weigh in Miller's favor.  Third, the district court concluded that Miller had not been diligent in pursuing relief because he had not raised his *Martinez* claim for eighteen months—from the time *Martinez* was decided in March 2012 until Miller filed his Rule 60(b)(6) motion in September

---

[1]We note, at the outset, that the Supreme Court's recent decision in *McWilliams v. Dunn*, 137 S. Ct. 1790 (2017), held that *Ake* clearly established a defendant's right to an independent expert.  Although this may be relevant to Miller's *habeas* claim regarding the denial of state funds for an independent health expert during the guilt phase of his trial, it does not impact our decision here that the district court properly denied Miller's request for Rule 60(b)(6) relief as to his IATC claim.

2013. Considering these factors together, the district court concluded that Rule 60(b)(6) relief was inappropriate.

Alternatively, the court held that even if Rule 60(b)(6) relief was appropriate, *Martinez* and *Trevino* still did not excuse the default of Miller's IATC claim because he had not put forward a "substantial claim" of ineffective assistance. The court noted that Olive, as trial counsel, was objectively reasonable in investigating and presenting Miller's background despite the fact that he did not renew his request for funds to hire a psychological expert. It also held that Olive could not be blamed for failing to persuade a series of state courts to provide Miller an expert. The court did not reach the question of prejudice.

Miller was granted a COA as to whether, in light of *Martinez* and *Trevino*, he had demonstrated extraordinary circumstances meriting Rule 60(b)(6) relief. Miller now appeals.

II.

Federal Rule of Civil Procedure 60(b)(6) is a "catchall provision" providing relief from a final judgment for any reason not otherwise captured in Rule 60(b). *West v. Carpenter*, 790 F.3d 693, 696–97 (6th Cir. 2015) (citing *McGuire*, 738 F.3d at 750). Rule 60(b)(6) applies only in "exceptional or extraordinary circumstances where principles of equity mandate relief," *id.*, but such circumstances "rarely occur" in the *habeas* context. *Sheppard v. Robinson*, 807 F.3d 815, 820 (6th Cir. 2015) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)).

Rule 60(b)(6) motions necessitate "a case-by-case inquiry" in which the district court "intensively balance[s] numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *West*, 790 F.3d at 697 (quoting *McGuire*, 738 F.3d at 750). These factors can include "the risk of injustice to the parties" as well as "the risk of undermining the public's confidence in the judicial process." *Buck v. Davis*, 137 S. Ct. 759, 778 (2017) (citation omitted).

We review the denial of a Rule 60(b) motion for an abuse of discretion. *West*, 790 F.3d at 697. In the Rule 60(b)(6) context, this discretion is "especially broad due to the underlying equitable principles involved." *Id.* (citing *Tyler v. Anderson*, 749 F.3d 499, 509 (6th Cir. 2014)).

III.

As a general rule, there is no constitutional right to an attorney in state post-conviction proceedings. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). Consequently, a petitioner generally cannot claim ineffective assistance of post-conviction counsel during federal *habeas* review to excuse the procedural default of claims not raised in state court. *Id.* The Supreme Court, however, carved out a "narrow exception" to this rule, allowing a prisoner to show cause to excuse an otherwise-defaulted IATC claim. *Martinez*, 566 U.S. at 9. To qualify for this exception, a petitioner must present a substantial IATC claim, show that state law required him to bring the IATC claim during an initial-review post-conviction proceeding, and show that he received either no assistance or ineffective assistance during that initial state post-conviction proceeding. *Id.* at 14. *Trevino* expanded this exception to situations where there was no meaningful opportunity to present the IATC claim on direct appeal. 569 U.S. at 413.

Although we initially suggested that *Martinez* did not apply in Tennessee, *see Hodges v. Colson*, 711 F.3d 589, 612 (6th Cir. 2013), *amended by* 727 F.3d 517 (6th Cir. 2013), we have since recognized that *Martinez* and *Trevino* apply in the state, *see Sutton v. Carpenter*, 745 F.3d 787, 795 (6th Cir. 2014). The applicability of this exception, however, does not necessarily result in the availability of Rule 60(b)(6) relief. We have consistently held that *Martinez* and *Trevino*, as intervening decisions, do not alone "sufficiently change[] the balance of the factors for consideration under Rule 60(b)(6) to warrant relief." *Henness v. Bagley*, 766 F.3d 550, 557 (6th Cir. 2014); *see also Abdur'Rahman v. Carpenter*, 805 F.3d 710, 714 (6th Cir. 2015); *Wright v. Warden, Riverbend Maximum Sec. Inst.*, 793 F.3d 670, 672 (6th Cir. 2015). This is because we do not interpret *Martinez* and *Trevino* as "a change in the constitutional rights of criminal defendants, but rather [as] an adjustment of an equitable ruling . . . as to when federal statutory relief is available." *McGuire*, 738 F.3d at 750–51. Such a change in decisional law "is usually not, by itself, an extraordinary circumstance meriting Rule 60(b)(6) relief." *Id.* at 750 (quoting *Stokes v. Williams*, 475 F.3d 732, 735 (6th Cir. 2007) (internal quotation marks and citation omitted)). The district court thus correctly recognized that *Martinez* and *Trevino* are not enough and proceeded to consider Miller's other arguments in equity. We will do the same.

IV.

Miller maintains that, in addition to *Martinez* and *Trevino*, he has shown extraordinary circumstances warranting Rule 60(b)(6) relief because (1) he was diligent in pursuing Rule 60(b)(6) relief; (2) he has a substantial life interest in avoiding the death penalty; (3) the finality interest is diminished here because his IATC claim has not yet been litigated on the merits in either state or federal court; and (4) he has presented a substantial IATC claim. The district court rejected these arguments, finding that Miller was not diligent, giving considerable weight to the finality of judgments, and holding that his IATC claim was not substantial.**2** As we discuss below, the district court did not abuse its discretion in weighing these equitable interests and concluding that Miller's equitable arguments failed to show extraordinary circumstances warranting Rule 60(b)(6) relief.

A.

A Rule 60(b)(6) motion must be made "within a reasonable time." Fed. R. Civ. P. 60(c)(1). This is a fact-specific determination. *Tyler*, 749 F.3d at 510. We evaluate reasonableness by considering a petitioner's diligence in seeking relief. *See Sheppard*, 807 F.3d at 821; *Wright*, 793 F.3d at 672. In situations similar to Miller's, we examine the time between the date of the decision constituting a change in the law and the date that the Rule 60(b)(6) motion was filed. *See Gonzalez*, 545 U.S. at 536–37 (finding an eight-month delay was not diligent); *Wright*, 793 F.3d at 672 (noting that a Rule 60(b) motion was diligently filed when done within twelve months of *Martinez*). We also look to whether the petitioner raised the issue in his petition for rehearing or for Supreme Court review. *See Sheppard*, 807 F.3d at 821 (finding a petitioner was not diligent when *Martinez* could have been, but was not, raised in a *certiorari* petition); *see also Gonzalez*, 545 U.S. at 537 (finding a petitioner was not diligent when he did not raise the issue in either his rehearing or *certiorari* petition).

---

**2**The district court also considered whether the affidavits from both trial and post-conviction counsel presented new evidence related to his IATC claim. It concluded that the affidavit from trial counsel did not present any new evidence and that the affidavit from post-conviction counsel, although new, addressed only the deficiencies in Miller's post-conviction representation and not the underlying IATC claim. For this reason, it does not appear that the district court considered the affidavits to weigh in favor of finding extraordinary circumstances. Because Miller does not challenge this determination on appeal, we do not consider it here.

The Supreme Court decided *Martinez* on March 20, 2012.  566 U.S. at 1.  At that point, we had heard argument on Miller's § 2254 petition but had yet to issue a decision.  *See Miller*, 694 F.3d at 691.  Miller did not bring *Martinez* to our attention prior to our decision on September 13, 2012, nor did he raise the issue in his petition for rehearing.  *Id.*  And when Miller sought Supreme Court review of his § 2254 petition on March 21, 2013, he made no argument with respect to *Martinez*.  On March 26, 2013, we decided *Hodges v. Colson*, which suggested that *Martinez* did not apply in Tennessee.  711 F.3d at 612.  On May 28, 2013, the Supreme Court decided *Trevino*, which expanded the *Martinez* exception.  *Trevino*, 569 U.S. at 413.  That same day, the Court denied Miller's petition for a writ of *certiorari*, making the dismissal of his § 2254 petition final.  On August 14, 2013, we amended *Hodges* such that it no longer decided the question of *Martinez*'s applicability to Tennessee prisoners.[3]  *Compare Hodges*, 711 F.3d at 612, *with Hodges*, 727 F.3d at 540.  Miller filed his Rule 60(b)(6) motion on September 20, 2013.

The district court held that Miller was not diligent because eighteen months had elapsed between the time *Martinez* was decided and his Rule 60(b)(6) motion.  The district court looked to *Smith v. Colson*, 566 U.S. 901 (2012) (Mem.), where a similarly situated prisoner had argued for *Martinez* relief in his *certiorari* petition, to suggest that Miller could have done the same.  Additionally, the district court looked to the Supreme Court's decision in *Ryan v. Schad*, 570 U.S. 521, n.2 (2013) (per curiam), which it interpreted to disapprove of a four-month delay in seeking to vacate a judgment under *Martinez*.

On appeal, Miller relies heavily on the argument that he was precluded from seeking relief under *Martinez* and *Trevino* until our original decision in *Hodges* was amended in August 2014, and thus, he was diligent in pursuing relief because he filed his Rule 60(b)(6) motion within six weeks of *Hodges* being amended.  We find this argument unpersuasive.  First, it ignores the fact that Miller could have, but did not, challenge the procedural default of his IATC claim in the twelve months between the time *Martinez* was decided (March 2012) and the point at which we first decided *Hodges* (March 2013).  Second, nothing prevented Miller from

---

[3]We did not explicitly determine that *Martinez* and *Trevino* applied in Tennessee until March 19, 2014, when we decided *Sutton*, 745 F.3d at 792.

immediately seeking Rule 60(b)(6) relief after *Trevino* was decided—a case that necessarily called into question our initial decision in *Hodges*. Even if we accepted the proposition that *Hodges* initially provided a valid bar, we would not extend that bar past the point at which *Trevino* was decided in May 2013.

We cannot excuse Miller's failure to challenge the procedural default of his IATC claim for more than sixteen months—the twelve months between *Martinez* and *Hodges* and the four months between *Trevino* and his Rule 60(b)(6) motion. Miller has gone beyond the eight-month delay that constituted a lack of diligence in *Gonzalez*, 545 U.S. at 537, and the twelve-month delay that we accepted as diligent in *Wright*, 793 F.3d at 672. Furthermore, Miller failed to raise *Martinez* in his *certiorari* petition, a fact we previously found dispositive on the question of diligence. *Sheppard*, 807 F.3d at 821. On these facts, we cannot say that Miller was diligent in pursuing relief under *Martinez*.

B.

There is no question that Tennessee has an interest in the finality of its judgments. *Wright*, 793 F.3d at 672. And even in cases involving the death penalty, we must afford "profound respect" to the finality interests stemming from our prior decision denying *habeas* relief. *Sheppard*, 807 F.3d at 821 (citing *Calderon v. Thompson*, 523 U.S. 538, 556 (1998)). However, we still must balance these interests against the Supreme Court's admonition that "[c]onventional notions of finality . . . have no place where life or liberty is at stake and infringement of constitutional rights is alleged," *Sanders v. United States*, 373 U.S. 1, 8 (1963); *see also Wright*, 793 F.3d at 673; *Thompson v. Bell*, 580 F.3d 423, 444 (6th Cir. 2009), and our recognition that finality interests must be considered in concert with the "more irreversible finality of [Miller's] execution." *Wright*, 793 F.3d at 673 (quoting *Thompson*, 580 F.3d at 444).

The state and federal courts have provided Miller with considerable opportunities for review. Miller was tried, convicted, and sentenced to death in 1982. *See State v. Miller*, 674 S.W.2d 279, 280 (Tenn. 1984). His conviction and sentence were reviewed on direct appeal by the Tennessee Supreme Court, which affirmed his conviction but remanded his case for resentencing. *Id.* at 284. After he was again sentenced to death, the Tennessee Supreme Court

affirmed and the United States Supreme Court denied his petition for a writ of *certiorari*. *State v. Miller*, 771 S.W.2d 401 (Tenn. 1989), *cert. denied*, 497 U.S. 1031 (1990). Miller also had the opportunity to seek state post-conviction relief. *See Miller v. State*, No. 03C01-9805-CR-00188, 1999 WL 1046415 (Tenn. Crim. App. Nov. 19, 1999). The Tennessee Supreme Court denied his request for post-conviction relief and the U.S. Supreme Court again declined to grant his *certiorari* petition. *Miller v. State*, 54 S.W.3d 743 (Tenn. 2001), *cert. denied*, 536 U.S. 927 (2002). Miller then raised twenty-five claims for relief on federal *habeas* review, the dismissal of which we affirmed on appeal. *See Miller*, 694 F.3d at 693. Again, in May 2013, the Supreme Court declined to review Miller's case when it denied his petition for a writ of *certiorari* on the § 2254 petition. *See Miller v. Colson*, 569 U.S. 1007 (2013) (Mem.).

Miller argues that despite this procedural history, he has not had an opportunity to litigate his IATC claim on the merits in the course of his federal *habeas* proceedings. It is difficult to dispute this point given that the district court refused to consider his IATC claim on the grounds that it was procedurally defaulted. We refuse to accept, however, that this alone outweighs the finality interests at stake when Miller had the opportunity to challenge the procedural default of his IATC claim before his *habeas* judgment became final but failed to do so. Similarly, we cannot say that Miller's interest in avoiding the death penalty is, by itself, enough to overcome the finality interests at stake. *See Sheppard*, 807 F.3d at 821. Because neither of Miller's proposed interests overcomes the state and judicial interests in finality and because those finality interests are strengthened given the extended history of this case, we agree with the district court that the balance of these interests does not favor Rule 60(b)(6) relief in this case.

C.

Although the district court did consider the merits of Miller's IATC claim in response to Miller's pending motion, it is unclear whether the court was determining only that Miller had not presented a "substantial" IATC claim as required by *Martinez*, or whether it was evaluating the merits of Miller's underlying claim as an equitable factor weighing for or against Rule 60(b)(6) relief. On appeal, Miller argues that the strength of his IATC claim is an equitable factor that we must consider in determining whether Rule 60(b)(6) relief is appropriate. In doing so, he relies on the Supreme Court's recent decision in *Buck*, 137 S. Ct. at 775–80, our decision in *Wright*,

793 F.3d at 673, and a recent Third Circuit decision, *Cox v. Horn*, 757 F.3d 113, 124–25 (3d Cir. 2014).

1.

As an initial matter, we are hesitant to agree that *Buck*, *Wright*, and *Cox* necessarily require us to consider the merits of Miller's IATC claim. Although the Supreme Court, in deciding *Buck*, considered the merits of the petitioner's ineffective-assistance-of-counsel claim, it did so because one issue before the Court was the substantive question as to whether the petitioner had received ineffective assistance. *Buck*, 137 S. Ct. at 775. When the Court considered whether the petitioner had established extraordinary circumstances under Rule 60(b)(6), it looked to only three factors: (1) that Buck "may have been sentenced to death in part because of his race," which would have punished him on the basis of an immutable characteristic; (2) that the state had conceded error and had consented to resentencing in similarly situated cases; and (3) that the state had a competing finality interest. *Id.* at 777–79. Contrary to Miller's argument on appeal, the *Buck* Court did not consider the merits of the ineffective-assistance claim for the purposes of Rule 60(b)(6), nor did it assign greater weight to the change in the law because of the substantiality of that claim. Instead, it was focused on the injection of race into the sentencing determination, the state's actions in similar cases, and notions of finality.

Miller is correct that we have previously considered the merits of the underlying ineffective-assistance claim in deciding whether a district court erred in denying Rule 60(b)(6) relief. *See Wright*, 793 F.3d at 673. In that case, we credited the petitioner for being diligent in pursuing relief, but held that his diligence was outweighed by state and judicial interests in the finality of judgments. *Id.* at 672–73. We also noted that the weakness of the underlying ineffective-assistance claim was "important" in finding that the equities weighed against reopening the case. *Id.* at 673. Similarly, the Third Circuit has said it was "appropriate" to consider the merits of the underlying claim because "[a] court need not provide a remedy under 60(b)(6) for claims of dubious merit that only weakly establish ineffective assistance . . . ." *Cox*, 757 F.3d at 124–25.

Because Rule 60(b)(6) determinations are fact-specific and require "a case-by-case inquiry," *West*, 790 F.3d at 697 (citation omitted), we cannot say that we must, as a matter of course, consider the merits of Miller's IATC claim simply because it was appropriate to do so in *Wright* and *Cox*. However, we will assume it is appropriate in this case and proceed to evaluate Miller's IATC claim for the purpose of considering whether it changes the balance of equities with respect to his Rule 60(b)(6) motion.

2.

In his *habeas* petition, Miller argued that Olive was constitutionally ineffective at resentencing for "fail[ing] to retain competent mental health professionals with the skill and knowledge to diagnose [Miller's] mental disorders and/or disturbances . . . or to explain how those disturbances led to . . . Standifer's death," which left the resentencing jury "uninformed . . . regarding an important statutory mitigating factor" and without a "scientific explanation for [Miller's] otherwise incomprehensible acts." DE 18, Page ID 89; JA 22. In his Rule 60(b)(6) motion, Miller restates this claim more broadly as Olive's "failure to present compelling evidence that Miller's actions . . . were directly attributable to his profound mental illness at the time of the offense *and* that his mental illness was directly attributable to the almost unspeakable physical and sexual trauma he suffered as a child, and/or organic brain damage." DE 112, Page ID 486; CA6 R. 12, at 27–28. Miller now faults Olive for both failing to call an expert and failing to "fully" or "adequately investigate" Miller's background and history of trauma. DE 112, Page ID 489. At oral argument, Miller clarified that this claim is grounded in Olive's failure to request any expert assistance at resentencing. Miller argues that this was deficient performance because there was no strategic justification or excuse for Olive not to have pursued all reasonably available mitigating evidence. And that it was prejudicial because expert testimony would have allowed him to present a "far different story" to the resentencing jury that would have explained the "bizarre aspects" of the murder and resulted in at least one juror voting against the death penalty. CA6 R. 12, at 33.

3.

To demonstrate that his counsel was constitutionally ineffective, Miller must show that "(1) his counsel's performance was deficient, that is, objectively unreasonable under prevailing professional norms, and (2) it prejudiced his defense." *Cornwell v. Bradshaw*, 559 F.3d 398, 405 (6th Cir. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)).

In considering the deficiency prong, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and attempt "to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. However, the "failure to reasonably investigate the defendant's background and present mitigating evidence to the jury at sentencing can constitute ineffective assistance of counsel." *Goodwin v. Johnson*, 632 F.3d 301, 318 (6th Cir. 2011) (citing *Wiggins v. Smith*, 539 U.S. 510, 521–22 (2003)). In making this determination, we focus "on whether the investigation supporting counsel's decision not to introduce mitigating evidence . . . was itself reasonable." *Clark v. Mitchell*, 425 F.3d 270, 284 (6th Cir. 2005) (citation omitted). This turns on both "the quantum of evidence known to counsel . . . as well as whether that evidence should have led a reasonable attorney to investigate further." *Id.* Choices "made after less than a complete investigation are reasonable precisely to the extent that a reasonable professional judgment supported the limitations on the investigation." *Goodwin*, 632 F.3d at 318–19 (quoting *Wiggins*, 539 U.S. at 528). Such choices include whether to present expert testimony at the penalty phase. *See Jackson v. Bradshaw*, 681 F.3d 753, 771 (6th Cir. 2012); *see also Hartman v. Bagley*, 492 F.3d 347, 360 (6th Cir. 2007) ("[C]ounsel might quite reasonably have made a strategic decision to present [an expert's report as to] mitigation findings through the more sympathetic lens of family members' testimony.").

We cannot excuse Olive's failure to engage any expert in support of Miller's case for mitigation. Olive does not claim, and the record does not indicate, that the court would have refused access to a neutral expert, such as Gee, for the purposes of resentencing. The record indicates that Olive had notice of how expert testimony could have helped Miller's case at the penalty phase. His pre-trial investigation uncovered evidence of physical abuse, sexual abuse, abandonment, and neglect. He also learned of numerous instances of Miller suffering severe

head trauma, hearing voices, and experiencing blackouts. Prior to resentencing, Olive obtained additional social-services and educational records providing further evidence that Miller had suffered physical and sexual abuse. This evidence suggested that Miller may have been suffering from a head injury, mental defect, or mental disease. But Olive chose not to consult with any expert to further investigate Miller's condition or present testimony connecting Miller's background and condition with Standifer's murder, evidence that would have been consistent with the theory of mitigation Olive presented.

Instead, Olive presented Miller's background, evidence of abuse, and the theory that Miller may have suffered an adolescent head injury through lay testimony. Olive framed this to the resentencing jury as a non-statutory mitigating factor. He also requested, and received, the following statutory mitigating instruction at resentencing:

> The capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was subsequently impaired as a result of mental disease or defect or intoxication which was insufficient to establish a defense to the crime but which substantially affected his judgment.[4]

App. 109; Supp. App. 98. But Olive made these decisions without consulting—or even requesting to consult with—an expert to understand what testimony, if any, such an expert could provide or whether there was something more to investigate with respect to Miller's mental health. This leads us to seriously question the reasonableness of Olive's investigation at resentencing. *See Goodwin*, 632 F.3d at 318. Had Olive consulted with an expert, or even requested the opportunity to do so, and then declined to present expert testimony, we would be much more likely to say that such a decision was objectively reasonable. Indeed, our past decisions suggest that establishing deficiency is considerably more difficult when counsel has made an informed decision regarding mitigation after consulting with experts. *See Landrum v. Mitchell*, 625 F.3d 905, 931–32 (6th Cir. 2010) (counsel was not deficient when, after completing a thorough investigation and obtaining a court-appointed expert, he made the "strategic decision not to present [the expert's] underdeveloped testimony"); *Hartman*, 492 F.3d at 359–60 (counsel was reasonable in declining to present expert testimony after consulting with

---

**4**Although the resentencing court agreed to the instruction, it did note that it was "difficult to see" evidence in the record to support such an instruction. App. 109.

a forensic psychologist and deciding to present the psychologist's findings "through the more sympathetic lens" of the defendant's family members); *Broom v. Mitchell*, 441 F.3d 392, 410 (6th Cir. 2006) (counsel was not objectively unreasonable because he had "attempted to obtain psychological testimony as well as the services of a mitigation expert" as part of a broader investigation); *Campbell v. Coyle*, 260 F.3d 531, 555 (6th Cir. 2001) (counsel's failure to detect defendant's mental disorder was reasonable because he had relied on the evaluation of a psychologist).

Even if Olive's performance was deficient, Miller must still show prejudice to succeed on his IATC claim. This presents a much more difficult hurdle for Miller. In the context of a death-penalty proceeding, the Supreme Court defines prejudice as "a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695. Prejudice from the deficient investigation or presentation of mitigating evidence requires "new evidence" that "differ[s] in a substantial way—in strength and subject matter—from the evidence actually presented at sentencing." *Clark*, 425 F.3d at 286 (quoting *Hill v. Mitchell*, 400 F.3d 308, 319 (6th Cir. 2005)). We then "reweigh the evidence in aggravation against the totality of available mitigating evidence, both that adduced at trial and that adduced in post-conviction proceedings." *Goodwin*, 632 F.3d at 327.

In order to find prejudice, we must assume that the expert called to testify would have presented new evidence that favored mitigation. *See Clark*, 425 F.3d at 286. To do so, we start with the evidence that Olive did present in his case for mitigation at resentencing. Olive presented a theory of mitigation focused on Miller's background. This included testimony from Miller's mother about the absence of Miller's biological father, her struggle with alcoholism, and the physical abuse Miller suffered at the hands of his stepfather—including a serious untreated head injury. Olive also presented testimony that Miller had been seriously injured while he was in foster care and that he had been subject to sexual abuse as a young adult. In its summation, the state attempted to minimize the strength of testimony and argument as to how Miller's age, upbringing, and intoxication—from both alcohol and LSD—constituted sufficient factors to preclude the death penalty. Finally, the jury was explicitly instructed to consider whether

Miller's capacity and impairment by way of mental disease, mental defect, or intoxication substantially affected his judgment.

On federal *habeas* review, Miller presented declarations from three expert witnesses in the areas of psychiatry, psychology, and neurology. Pablo Stewart, a clinical and forensic psychiatrist, expressed his opinion that Miller developed Posttraumatic Stress Disorder and severe depression as a result of his childhood and adolescence and that Miller suffered from auditory and visual hallucinations around the time of Standifer's murder, as well as other "clear symptoms of psychosis and dissociation." App. 53. Stewart concluded that Miller suffered from "multiple neurocognitive disorders." App. 54. Thomas Hyde, a neurology expert, opined that Miller's behavior was "consistent with developmental or acquired frontal lobe dysfunction" that could have been a result of traumatic head injury and would have impacted his ability to control his impulses and manage his anger. Hyde Decl., App. 61. David Lisak, a clinical psychologist, stated that Miller's alcohol and drug use stemmed from his history of psychological trauma and physical abuse. Lisak also opined that Miller's behavior during Standifer's murder was consistent with "an outburst of unbridled rage and aggression" that could be associated with heavy alcohol and drug use.[5] Lisak Decl., App. 85.

Miller continues to cite these reports as the new evidence in support of his claim that Olive was constitutionally ineffective. Although we recognize that the conclusions offered by Miller's post-conviction experts were not presented at resentencing, the reports are not evidence that is substantially different in strength and subject matter from what Olive presented at resentencing. *See Clark*, 425 F.3d at 286–87. Olive "presented most of the same facts that the post-conviction mitigation witnesses said should have been presented." *Landrum*, 625 F.3d at 932–33 (finding that expert testimony drawing conclusions from a defendant's troubled upbringing did not "differ[] significantly both in strength and subject matter from the evidence actually presented at sentencing"); *see also Hartman*, 492 F.3d at 360–61 (finding post-conviction expert testimony was not new when compared to mitigation evidence provided

---

[5]Although we adopt these conclusions here for the purposes of evaluating Miller's claim of new evidence, we question whether a neutral, court-appointed expert would have reached such conclusions given Gee's testimony at trial that Miller was neither insane nor incompetent.

exclusively from lay witnesses).  Olive's theory of mitigation encompassed Miller's neglect and abuse as a child, the possibility that he suffered a traumatic head injury, and his drug and alcohol use around the time of Standifer's murder.  Although Olive used lay witnesses to do so, he presented the same facts that now underlie the evidence Miller claims is new.  Thus, we question whether Miller can succeed in establishing the prejudice prong of his IATC claim.

Finally, even if we were to credit Miller's evidence and assume that an expert would have presented similarly favorable testimony, we would still have to find that the evidence sufficiently changed the balance such that at least one juror would have voted against death.  *See* Tenn. Code Ann. § 39-13-204(i).  Because we have sufficient concerns with Miller's ability to establish new evidence, we decline to engage in such balancing here.

\* \* \*

Given our uncertainty as to Miller's ability to establish prejudice, we cannot agree that his IATC claim is "unquestionably meritorious."  Nor can we say that he has presented such a clear case of ineffective assistance that it overcomes the other relevant equitable factors weighing against Rule 60(b)(6) relief, especially Miller's lack of diligence in raising his *Martinez* claim—a factor to which we have previously given considerable weight.  *See Sheppard*, 807 F.3d at 821.  Thus, in light of the Supreme Court's instruction that extraordinary circumstances are rare in the *habeas* context, *Gonzalez*, 545 U.S. at 535, and the "especially broad" discretion we must give to the district court in this context, *West*, 790 F.3d at 697, we conclude that the district court did not abuse its discretion in finding that Miller failed to establish extraordinary circumstances under Rule 60(b)(6).  We therefore affirm the district court's denial of Miller's request for Rule 60(b)(6) relief.[6]

V.

For the foregoing reasons, we affirm the denial of Miller's Rule 60(b)(6) motion.

---

[6]If Miller had shown extraordinary circumstances entitling him to Rule 60(b)(6) relief, he would still need to show that his underlying IATC claim was a "substantial" one and that he had received ineffective assistance of counsel during his initial post-conviction proceedings in order to show that he was eligible for consideration on the merits.  *See Martinez*, 566 U.S. at 14; *Trevino*, 569 U.S. at 429.  Because we conclude that the district court was within its discretion in denying Miller Rule 60(b)(6) relief, we need not reach these questions.

---
**DISSENT**
---

HELENE N. WHITE, Circuit Judge, dissenting. Because Miller's case presents a "rare" circumstance in which Rule 60(b)(6) relief is appropriate in a habeas proceeding, *cf. Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005), I respectfully dissent.

Relief under Rule 60(b)(6) is available only in "exceptional or extraordinary circumstances where principles of equity mandate relief." *West v. Carpenter*, 790 F.3d 693, 696–97 (6th Cir. 2015) (citation omitted). As the majority observes, a "change in decisional law is usually not, by itself, an 'extraordinary circumstance' meriting Rule 60(b)(6) relief," *Stokes v. Williams*, 475 F.3d 732, 735 (6th Cir. 2007) (citation omitted), and this court has held that *Martinez/Trevino*, by themselves, are not "extraordinary" in the Rule 60(b)(6) context, *see Henness v. Bagley*, 766 F.3d 550, 557 (6th Cir. 2014). Further, determining whether a circumstance presented in a 60(b)(6) motion is "exceptional or extraordinary" involves a "case-by-case inquiry . . . [that] intensively balance[s] numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *West*, 790 F.3d at 697 (citation omitted). Whether a habeas petitioner presents "extraordinary" circumstances is determined partly in view of how diligent he was in seeking Rule 60(b)(6) relief after a change in decisional law. *See Gonzalez*, 545 U.S. at 537; *see also* Fed. R. Civ. P. 60(c)(1) (a movant must file his motion "within a reasonable time").

I consider these same balancing factors but reach a different conclusion: that the equities weigh heavily in favor of Miller, and accordingly that the district court abused its discretion in denying him relief under Rule 60(b)(6).

**(1) Diligence**

As the majority explains, we examine the time between the date of the decision constituting a change in law and the date the Rule 60(b)(6) motion was filed. Maj. Op. at 7. Eighteen months elapsed between the Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1

(2012) on March 20, 2012 and Miller's filing of his 60(b)(6) motion on September 20, 2013. Alternatively, the majority reasons that sixteen months elapsed between *Martinez* and the 60(b)(6) motion, deducting the two months between this court's decision in *Hodges v. Colson*, 711 F.3d 589, 612 (6th Cir. Mar. 26, 2013) (which cast doubt on *Martinez*'s application in Tennessee) and the Supreme Court's decision in *Trevino v. Thaler*, 569 U.S. 413 (2013) (which was decided on May 28, 2013 and extended *Martinez*'s equitable holding to states that make it "virtually" impossible to bring an ineffective-assistance claim on direct appeal). *Trevino*, 569 U.S. at 417. It is this sixteen-month period that the majority "cannot excuse," especially in light of cases in which twelve and eight months between a change in law and the filing of a 60(b)(6) motion showed, respectively, diligence and a lack thereof. Maj. Op. at 9 (citing *Wright v. Warden, Riverbend Maximum Sec. Inst.*, 793 F.3d 670, 672 (6th Cir. 2015) and *Gonzalez*, 545 U.S. at 537).

We found the petitioner in *Wright* was diligent in filing his 60(b)(6) motion twelve months after *Martinez* was decided (but months before *Trevino* was). 793 F.3d at 672. Although Wright may have been diligent in pressing his *Martinez* claim, as a Tennessee petitioner, that claim was not available to him at that time. The Supreme Court drew a clear line in *Martinez*, stating that it was recognizing only a "narrow exception" to the rule of *Coleman v. Thompson*, 501 U.S. 722 (1991), that ineffective assistance of post-conviction counsel is not cause to excuse a procedural default. 566 U.S. at 9. This narrow exception applied only "where the State *barred* the defendant from raising [ineffective-assistance] claims on direct appeal." *Id.* at 17 (emphasis added). *Martinez* did not apply nationwide, only to states that placed claims of ineffective assistance outside the direct-appeal process. We observed in our first *Hodges* opinion that "Tennessee's system does not implicate the same concerns as those that triggered the rule in *Martinez* because in Tennessee a collateral proceeding is not 'the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial.'" 711 F.3d at 612 (quoting *Martinez*, 566 U.S. at 8).

It was not until *Trevino* was decided on May 28, 2013 that the narrow *Martinez* exception to *Coleman* was extended to cover states that allow a prisoner to raise a claim of ineffective assistance on direct appeal but do not provide defendants with a "meaningful opportunity to

present" that claim. *Trevino*, 569 U.S. at 428. Indeed, despite Wright's diligence in raising his *Martinez* claim, if we had decided the merits and had only *Martinez* (and not *Trevino*) to follow, we would have been bound to hold that Tennessee is not covered by *Martinez*. In other words, absent the intervening decision *Trevino*, the diligence of the petitioner in *Wright* could not have mattered because he would have had no applicable change in law to rely on. The same goes for Miller. We cannot expect habeas petitioners to be diligent in bringing futile motions.

This is all to say that I disagree with the majority that *Martinez*'s date of decision is the proper point from which to measure whether Miller was diligent in filing his 60(b)(6) motion. Instead, the proper starting point is *Trevino*, decided the same day the Court denied Miller's petition for certiorari. *Trevino* extended *Martinez* to apply to "a State that in theory grants permission [to bring an ineffective-assistance claim on direct appeal] but, as a matter of procedural design and systemic operation, denies a meaningful opportunity to do so." 569 U.S. at 429. *That* was a holding applicable to Tennessee, as we implicitly recognized when we amended *Hodges* to remove the suggestion that *Martinez* was inapplicable to Tennessee convictions. 727 F.3d 517 (6th Cir. Aug. 14, 2013). Under the circumstances, Miller's filing his 60(b)(6) motion just shy of four months after *Trevino* was diligent.

**(2) Finality**

I agree with the majority that Tennessee has a strong finality interest in its criminal judgment, and agree as well that this interest must be balanced against Miller's interest in avoiding the "more irreversible finality of [his] execution." Maj. Op. at 9 (quoting *Wright*, 793 F.3d at 673). *See Calderon v. Thompson*, 523 U.S. 538, 556 (1998) ("A State's interests in finality are compelling when a federal court of appeals issues a mandate denying federal habeas relief."); *but see Sanders v. United States*, 373 U.S. 1, 8 (1963) ("Conventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged.").

The majority emphasizes that Miller has had multiple opportunities, in state and federal proceedings, to obtain review of his conviction and sentence; and although his ineffective-assistance claim has never been addressed on the merits, this is a consequence of his procedural

default of the issue. But not all defaulted claims are equal. It matters that counsel's ineffectiveness goes to the heart of the jury's decision to impose a death sentence, and, as I discuss below, that Miller's claim is a substantial one.

At re-sentencing, the paramount defense objective was to avoid the imposition of the death penalty. Mitigating evidence showing that Miller suffered from mental illness, trauma, or organic brain damage was the most "significant factor" in arguing in favor of that objective, and expert mental-health assistance was needed to evaluate, prepare, and present it. The state's interest in the finality of its judgments must be "tempered by its interest in the fair and accurate adjudication of criminal cases." *Cf. id.* at 7–9. Here, if Miller's "interest in avoiding the death penalty" cannot be said to "overcome the [state's] finality interests at stake," Maj. Op. at 10, it also cannot be said that the latter overcomes the former. The interests are at least in equipoise.

**(3) Merits**

I join the majority in assuming that consideration of the merits is appropriate, and, for the same reasons set out in the majority opinion, I agree that trial counsel Olive's "failure to engage any expert in support of Miller's case for mitigation" is inexcusable. *Id.* at 13. I respectfully disagree, however, with the conclusion that Olive's ineffectiveness did not prejudice Miller. Had Olive obtained the assistance of a mental-health expert, whether neutral or independent, there was a "reasonable probability . . . that the [jury] would have concluded that the balance of aggravating and mitigating factors did not warrant death." *Strickland v. Washington*, 466 U.S. 668, 695 (1984). This probability is sufficient to "undermine confidence in the outcome" of Miller's re-sentencing. *Id.* at 694.

In finding a lack of prejudice, the majority asserts that the lay witnesses' mitigation testimony at re-sentencing did not vary in a substantial way in strength and subject matter from the evidence Miller now offers in the form of declarations by Drs. Stewart, Hyde, and Lisak. I disagree.

The evidence given by lay witnesses was "troubled youth" testimony, including that Miller was neglected and physically abused by his parents. At most, these lay witnesses could support that Miller's background drove him to substance abuse. The lay witnesses were not

equipped to analyze Miller's school, child protective services, medical, or penal records. Nor could the lay testimony address Miller's psychological problems or organic brain damage.

In contrast, Dr. Hyde, a neurologist, examined Miller and found that he suffered from developmental or acquired frontal-lobe dysfunction, which can cause individuals to "have difficulty with impulse control, prioritization, judgment, reasoning, and anger management." Hyde Decl. at 5. Dr. Hyde also noted that Miller had an extensive history of bipolar disorder, which made him "particularly susceptible to impulsive and inappropriate behavior under periods of emotional distress[,]" and that Miller's substance abuse was likely an attempt at self-medication. *Id.* at 5–6. As the three declarations Miller obtained for his federal habeas petition show, an expert could have explained to the jury how Miller's traumatic childhood affected him psychologically and neurologically and influenced him to murder Standifer in a violent rage. The lay witnesses were of no help on this issue. The expert testimony is substantially different in strength and subject matter, and "[t]here is reason to think that" "access to the type of meaningful assistance in evaluating, preparing, and presenting the defense that *Ake* requires would have mattered." *McWilliams v. Dunn*, 137 S. Ct. 1790, 1801 (2017).

Further, although Olive did argue that Miller was the victim of sexual abuse as a young adult at the hands of a clergyman, he completely failed to inform the re-sentencing jury about the prolonged sexual abuse Miller was subjected to by his own mother, which Dr. Lisak opined caused "rage that stemmed from the confluence of his step-father's brutality, and his mother's incestuous abuse . . . .". Lisak Decl. at 27. Miller committed the sudden, brutal murder of a female intimate partner. There is reason to think that the jury would have viewed this crime differently had Miller been examined by a competent expert who could explain that it was influenced by childhood abuse that left him with "untreated, profound levels of rage that he directed at women." *Id.* Further, when Miller's mother was cross examined about what the majority acknowledges was "a serious untreated head injury," Maj. Op. at 15, she agreed with the government that Miller "didn't receive any serious injuries from that episode." Resentencing Tr. at 636. Expert testimony would have made the serious nature of the injuries clear.

The majority finds support in *Landrum v. Mitchell*, 625 F.3d 905 (6th Cir. 2010), for its conclusion that Miller was not prejudiced because the mental-health experts supporting his

federal habeas petition do not present evidence that "differs significantly both in strength and subject matter from the evidence actually presented at sentencing." *Id.* at 933. But Miller's case is far different from *Landrum*. In *Landrum*, we concluded that defense counsel was not ineffective. Counsel obtained funds for a psychologist, had her examine Landrum, and made the strategic decision not to present her testimony. *Id.* at 932. Here, defense counsel obtained no expert mental-health assistance on the mitigation issue at all, and we have concluded that he was ineffective. Further, the evidence of prejudice that *Landrum* observed was absent in that case is present here. *Cf. id.* at 933 ("In Landrum's case, nothing in the post-conviction record suggests that his childhood was drastically different from what the jury heard or that he suffers from a mental or physical condition that would explain or significantly mitigate his crimes."). The opinions of the post-conviction experts here *do* suggest that Miller's mental and neurological conditions would explain and significantly mitigate his crime.

In sum, Miller's post-conviction experts show the types of mitigating evidence that Olive could have uncovered had he sought the expert mental-health assistance—whether independent or neutral—that Miller was entitled to at his re-sentencing. Had the jury heard such evidence, there is a reasonable probability that it would have concluded that "the balance of aggravating and mitigating circumstances did not warrant death." *See Strickland,* 466 U.S. at 695.

*** 

Miller diligently brought his Rule 60(b)(6) motion less than four months after *Trevino* was decided. Both Miller and the State of Tennessee have considerable finality interests—Miller in avoiding the judgment of a death sentence and the state in enforcing it. Miller raises a substantial ineffective-assistance claim that his trial counsel was ineffective for failing to seek *any* expert mental-health assistance at re-sentencing, and has shown that there is a reasonable probability that this failure prejudiced him. Together, these factors give rise to the "exceptional or extraordinary circumstances where principles of equity mandate relief" under Rule 60(b)(6). *West*, 790 F.3d at 697 (citation omitted). I would reverse the district court's denial of this relief.