RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0130p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

STEPHEN MICHAEL WEST,

*Petitioner-Appellant,*

*v.*

WAYNE CARPENTER, Warden,

*Respondent-Appellee.*

No. 13-6358

─────────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:01-cv-00091—Thomas A. Varlan, Chief District Judge.

Argued: January 22, 2015

Decided and Filed: June 25, 2015

Before: BOGGS, MOORE, and COOK, Circuit Judges.

─────────────────

**COUNSEL**

─────────────────

**ARGUED:** Stephen Ferrell, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. Andrew C. Coulam, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee. **ON BRIEF:** Stephen Ferrell, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. Andrew C. Coulam, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee.

─────────────────

**OPINION**

─────────────────

BOGGS, Circuit Judge. Stephen West, a Tennessee prisoner sentenced to death, appeals the denial of his motion for relief from judgment filed pursuant to Federal Rule of Civil Procedure 60(b)(6). In September 2004, the district court denied West's initial habeas corpus

petition filed under 28 U.S.C. § 2254, and we affirmed. *West v. Bell*, 550 F.3d 542 (6th Cir. 2008). West's Rule 60(b)(6) motion sought to revisit a claim asserting the ineffectiveness of trial counsel due to a conflict of interest, arguing that, under the Supreme Court's decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), the ineffectiveness of his state post-conviction counsel excused the procedural default of that claim.

The district court denied relief and certified two questions for appeal: (1) whether *Martinez*, as expanded by *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), applies to Tennessee cases; and (2) whether *Martinez* and *Trevino* may constitute "extraordinary circumstances" justifying Rule 60(b)(6) relief. While *Martinez* and *Trevino* apply in Tennessee cases generally, they do not apply to West's conflict-of-interest claim because that claim was defaulted at the state post-conviction *appellate* proceeding, rather than *initial-review* proceeding. We therefore affirm the district court's denial of West's Rule 60(b)(6) motion.

## I

### A. Factual Background and Trial

On March 17, 1986, twenty-three-year-old Stephen West and seventeen-year-old Ronnie Martin drove to the home of fifteen-year-old Sheila Romines, a schoolmate of Martin who had rebuffed Martin's advances and embarrassed him in front of other students. *West*, 550 F.3d at 546; *State v. West*, 767 S.W.2d 387, 389–90 (Tenn. 1989). They waited until Sheila's father left for work at around 5:20 a.m. before entering the home and brutally murdering Sheila and her mother, Wanda Romines. *Ibid.* A forensic pathologist testified that Sheila had been raped and had suffered seventeen stab wounds, including fourteen torture-type cuts that were inflicted while she was alive. *Id.* at 391. Wanda also suffered torture-type wounds. *Ibid.*

Police arrested West and Martin the next day, and Tennessee prosecuted them separately. West's parents hired Richard McConnell for $10,000 to act as lead defense counsel, and the court appointed Thomas McAlexander as co-counsel. West admitted at trial that he was present at the crime scene but denied inflicting bodily harm upon either victim. He testified that Martin threatened his life with a gun and knives and forced him to rape Sheila. *Id.* at 390. On March 24, 1987, a jury convicted West of two counts of first-degree murder, two counts of aggravated

kidnapping, one count of aggravated rape, and one count of larceny. The jury sentenced him to death. West appealed his conviction and sentence to the Tennessee Supreme Court, which rejected all of his arguments on February 6, 1989. *Id.* at 403.

## B. State Post-Conviction Proceedings

West filed for post-conviction relief in the Criminal Court of Union County, Tennessee in October 1990, arguing, inter alia, that he received ineffective assistance at the sentencing phase because his trial counsel failed to investigate and present mitigating evidence of his childhood abuse by his own parents. West's amended petition for post-conviction relief alleged ineffective assistance in numerous ways, including that trial counsel (1) "repeatedly informed [West] that any and all decisions pertaining to his case would be made by [West's] family members since they had retained [counsel's] professional services," and (2) "assert[ed] that his effectiveness in the presentation and representation of [West] was contingent upon additional fees being paid to him in excess of the original contract." The amended complaint did not frame these allegations as stating a separate conflict-of-interest ineffective-assistance claim.

The post-conviction trial court held evidentiary hearings on September 24 and October 22, 1996. We summarized the evidence presented at the evidentiary hearing in our opinion affirming the denial of West's § 2254 motion, and so we review it only briefly here. *See West*, 550 F.3d at 547–49.

Dr. Eric Engum, a clinical psychologist, testified that, while West's intelligence and memory were within normal limits, he suffered from psychological problems that were "consistent with or reflect[ed] prior abuse." *Id.* at 547 (quoting *West v. Tennessee*, No. 3:01-cv-91, slip op. at 18 (E.D. Tenn. Sept. 30, 2004)). The State's expert witness, Dr. Bursten, disagreed with Dr. Engum's conclusion. *West*, 550 F.3d at 549.

West's sisters, Debbie West and Patricia Depew, and his aunt, Ruby West, testified that West's parents physically abused him throughout his childhood. *Id.* at 547–48. Debbie West further testified that she told defense counsel McConnell about the abuse but that McConnell responded that "the information about the alleged abuse was not relevant, and that, furthermore, her parents were paying him and would not admit to the abuse." *Id.* at 548. Debbie West also

testified that McConnell complained about the fee he was being paid and threatened to provide inadequate representation unless the family paid him more money.

McConnell testified that he conducted a complete investigation into West's life and denied ever being told by Debbie about West's abuse. McConnell admitted that he thought $10,000 was unreasonably low and that he contacted the family to request an additional $5,500 in fees and expenses but denied complaining to or threatening the family. *Id.* at 548–49.

Despite West's failure to expressly raise a conflict-of-interest ineffective-assistance claim, the post-conviction trial court interpreted West's allegations and evidence as stating a claim that trial counsel was ineffective due to a conflict of interest. *West v. Tennessee,* No. 629, slip op. at 4–5 (Tenn. Crim. Ct. April 14, 1997). The court analyzed the conflict-of-interest claim separately from the rest of West's ineffective-assistance arguments and concluded that West "failed to meet his burden of proof with respect to this allegation." *Id.* at 5. The Criminal Court also denied West's other claims. *Id.* at 15.

West appealed to the Tennessee Court of Criminal Appeals, but he did not raise the conflict-of-interest claim on appeal. The Tennessee Court of Criminal Appeals affirmed the denial of his post-conviction relief. *West v. Tennessee*, 04C01-9708-CR-00321 (Tenn. Ct. Crim. App. June 12, 1998).

> West then filed a petition for rehearing and, when that was denied, an application for permission to appeal to the Tennessee Supreme Court. The Tennessee Supreme Court allowed West to appeal only the issue of whether there was sufficient evidence to establish the aggravating circumstance, but the court ultimately affirmed the denial of post-conviction relief. West then filed for a petition for rehearing, which was denied on June 7, 2000.

*West*, 550 F.3d at 549.

## C. Federal Court Proceedings

In 2001, West filed his § 2254 petition in federal district court, alleging twenty-two grounds for habeas relief, including that lead counsel McConnell provided ineffective assistance because he was acting under an actual conflict of interest. *West*, 3:01-cv-91, slip op. at 181. The district court held that this claim was procedurally defaulted because West "did not raise the

claim that his counsel was operating under an actual conflict of interest in the Tennessee Court of Criminal Appeals after the state trial court denied his petition for post-conviction relief." *Id.* at 182. The district court also dismissed West's other claims, and we affirmed. *West*, 550 F.3d at 567.

In 2010, West filed a motion seeking relief from judgment under Rule 60(b). The district court transferred the case for our consideration as a second or successive habeas petition, and we dismissed the case because West had not set forth grounds warranting a successive petition. *In re West*, 402 F. App'x 77, 79 (6th Cir. 2010). In February 2013, West filed this Rule 60(b)(6) motion. The motion relied on the Supreme Court's decision in *Martinez* in an attempt to show cause and prejudice to excuse the procedural default of West's conflict-of-interest claim, arguing that *Martinez* constitutes an "exceptional or extraordinary circumstance" that justifies Rule 60(b)(6) relief. *See E. Brooks Books, Inc. v. City of Memphis*, 633 F.3d 459, 466 (6th Cir. 2011). The Supreme Court decided *Trevino*, a case that expanded *Martinez*'s holding, in May 2013. In September 2013, the district court denied West's motion but granted certificates of appealability on two issues: (1) whether *Martinez* and *Trevino* are applicable to Tennessee cases; and (2) whether *Martinez* and *Trevino* may constitute extraordinary circumstances justifying Rule 60(b)(6) relief. *West. v. Carpenter*, No. 3:01-cv-91, 2013 WL 5350627, at *1 (E.D. Tenn. Sept. 23, 2013). This appeal followed.

## II

Federal Rule of Civil Procedure 60(b)(6) is a catchall provision that provides for relief from a final judgment for any reason justifying relief not captured in the other provisions of Rule 60(b). *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 750 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 998 (2014). Rule 60(b)(6) applies only in exceptional or extraordinary circumstances where principles of equity mandate relief. *Ibid.* "The decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Ibid.*; *Thompson v. Bell*, 580 F.3d 423, 442 (6th Cir. 2009). While we review the denial of a Rule 60(b) motion for an abuse of discretion, the district court's discretion in deciding a Rule 60(b)(6) motion is

especially broad due to the underlying equitable principles involved. *Tyler v. Anderson*, 749 F.3d 499, 509 (6th Cir.), *cert. denied sub nom. Tyler v. Lazaroff*, 135 S. Ct. 370 (2014).

**III**

A state prisoner is eligible for federal habeas relief under § 2254 only if he first exhausts state-court remedies. *See* 28 U.S.C. § 2254(b). The exhaustion requirement is satisfied only if the petitioner has "fairly presented" the "substance of [his] federal habeas corpus claim" to the state courts. *Picard v. Connor*, 404 U.S. 270, 275, 278 (1971). If the petition fails to raise a claim on appeal, in violation of a state procedural rule, that claim is subject to procedural default and will not be reviewed by federal courts unless the petitioner demonstrates cause and prejudice for his default. *See Coleman v. Thompson*, 501 U.S. 722, 729, 750 (1991). Constitutionally ineffective assistance of counsel may constitute "cause" to excuse procedural default in certain cases. But "a petitioner [ordinarily] cannot claim constitutionally ineffective assistance of counsel" at "state post-conviction proceedings" because "[t]here is no constitutional right to an attorney" at those proceedings. *Id.* at 752. Therefore, the Supreme Court in *Coleman* held that attorney error in state post-conviction proceedings "cannot constitute cause to excuse [a] default in federal habeas." *Id.* at 757.

In *Martinez*, the Supreme Court carved out a "narrow exception" to *Coleman*'s general rule. 132 S. Ct. 1315. It held that

> [w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 1320. Because initial-review collateral proceedings provide the first opportunity for the state court to consider an ineffective-assistance-of-trial-counsel claim, they are "in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim." *Id.* at 1317. The *Martinez* exception to *Coleman* is necessary because,

> [w]hen an attorney errs in initial-review collateral proceedings [by failing to raise an ineffective-of-assistance-of-trial-counsel claim], it is likely that no state court at any level will hear the prisoner's claim. . . . And if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the

procedural default in a federal habeas proceeding, no court will review the prisoner's claims.

*Id.* at 1316. Therefore, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 1315.

In *Trevino*, the Supreme Court expanded the *Martinez* exception to apply where, although state procedural law does not expressly prohibit a defendant from raising an ineffective-assistance claim on direct appeal, the state's "procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." 133 S. Ct. at 1921. Because Tennessee's procedural framework directs defendants to file ineffective-assistance claims in post-conviction proceedings rather than on direct appeal, we have held that the *Martinez-Trevino* exception to *Coleman* applies in Tennessee cases. *Sutton v. Carpenter*, 745 F.3d 787, 795–96 (6th Cir. 2014).

Although the *Martinez-Trevino* exception applies in Tennessee cases, it does not apply to West's defaulted conflict-of-interest claim because he raised that claim at the post-conviction initial-review proceeding and failed to preserve it on appeal. The Supreme Court stated that the exception "does not extend to attorney errors in any proceeding beyond the *first occasion* the State allows a prisoner to raise a claim of ineffective assistance at trial," "including appeals from initial-review collateral proceedings." *Martinez*, 132 S. Ct. at 1320 (emphasis added). In denying his § 2254 motion, the district court concluded that the conflict-of-interest claim was defaulted because West failed to raise the issue at his post-conviction *appellate* proceedings. We held in *Wallace v. Sexton* that the *Martinez-Trevino* exception does not extend to attorney error at post-conviction *appellate* proceedings because those proceedings are not the "first occasion" at which an inmate could meaningfully raise an ineffective-assistance-of-trial-counsel claim. 570 F. App'x 443, 453 (6th Cir. 2014).

The first occasion for West to raise his conflict-of-interest ineffective-assistance claim was the initial-review post-conviction proceeding before the Criminal Court of Union County. West argues on appeal that his conflict-of-interest claim was procedurally defaulted at that stage,

and not at the post-conviction appellate proceeding. West does not argue that post-conviction trial counsel failed to raise the conflict-of-interest claim. He concedes that, although his amended petition did not expressly frame certain allegations contained therein as a conflict-of-interest claim, those allegations—and accompanying evidence—"must have [made it] obvious to the post-conviction trial court that [West was] talking about a conflict of interest." Oral Argument at 3:07, *West v. Carpenter*, No. 13-6358 (6th Cir. argued Jan. 22, 2015). Instead, West contends that post-conviction trial counsel was ineffective because "counsel never advanced the proper federal standard" to analyze a conflict-of-interest claim. *Id.* at 2:00. According to West, the post-conviction trial court should have applied the presumed-prejudice standard (sometimes called the "adversely affected" standard) under *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980), rather than the "reasonable probability [sufficient to undermine confidence in the outcome] that . . . the result of the proceeding would have been different" standard of prejudice under *Strickland v. Washington*, 466 U.S. 668, 694 (1984). This argument fails for two reasons.

First, the *Sullivan* standard was inapplicable. *Sullivan*'s presumed-prejudice standard applies only if there was an "actual conflict of interest."[1] *See e.g., Kumar v. United States*, 163 F. App'x 361, 366–67 (6th Cir. 2006). But the post-conviction trial court found that West "failed to meet his burden of proof with respect to" the *existence* of a conflict of interest, and therefore it had no reason to apply the *Sullivan* standard. *West*, No. 629, slip op. at 5. Post-conviction trial counsel's failure to ask for an inapplicable standard was not ineffective assistance. Second, and more importantly, to the extent that post-conviction trial counsel was ineffective, that ineffectiveness at trial could not have caused *procedural default*. Despite West's oblique presentation of the conflict-of-interest claim, the post-conviction trial court identified the claim and denied it on the merits. Even if the post-conviction trial court had ruled erroneously, and its error were traceable directly to counsel's deficient advocacy, the conflict-of-interest claim would not have been *procedurally defaulted* at the post-conviction trial proceeding because West retained the right to preserve the claim by appealing.

---

[1]Additionally, "the Supreme Court found that the presumed prejudice standard of *Sullivan* was clearly established only in the situation of a conflict of interest due to multiple concurrent representation." *Stewart v. Wolfenbarger*, 468 F.3d 338, 350 (6th Cir. 2006) (citing *Mickens v. Taylor*, 535 U.S. 162, 175 (2002)). Trial counsel did not concurrently represent West and his parents in this case.

When the state court denies a petitioner's ineffective-assistance claim on the merits, *Martinez* does not apply. Unlike in *Martinez*, default occurred only after West failed to appeal that denial before the Tennessee Court of Criminal Appeals. Although this failure may have been the product of attorney error, attorney error at state post-conviction appellate proceedings cannot excuse procedural default under the *Martinez-Trevino* framework. *Wallace*, 570 F. App'x at 453.

**IV**

There is no reason to revisit West's conflict-of-interest claim under the *Martinez-Trevino* framework because that claim was defaulted at the state post-conviction appellate proceeding. Accordingly, without reaching the question of whether *Martinez* and *Trevino* may constitute extraordinary circumstances justifying Rule 60(b)(6) relief, we AFFIRM the district court's denial of West's Rule 60(b)(6) motion.