GIBBONS, J., delivered the opinion of the court in which SILER, J., joined. WHITE, J. (pp. 706-10), delivered a separate dissenting opinion. OPINION JULIA SMITH GIBBONS, Circuit Judge. > David Miller was convicted and sentenced to death for the 1981 murder of Lee Standifer. His sentence was upheld by the Tennessee Supreme Court and we affirmed the dismissal of his § 2254 habeas petition. Seeking to revisit his ineffective-assistance-of-trial-eounsel (IATC) claim in light of Martinez v. Ryan, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), and Trevino v. Thaler, 569 U.S. 413, 133 S.Ct. 1911, 185 L.Ed.2d, 1044 (2013), Miller, now appeals the district court’s denial of his motion -for relief from judgment under Federal Rule of Civil Procedure 60(b)(6). For the reasons that follow, we affirm the decision of the district court. .. I. • A. We previously reviewed the facts underlying Miller’s conviction in Miller, v. Colson, 694 F.3d 691 (6th Cir. 2012). As relevant here, Lee Standifer was murdered in Knoxville, Tennessee, on May 20, 1981. Id. at 693. She was stabbed with a large knife and a fireplace poker, bound with a rope, and dragged into a wooded area. Id. The evidence at trial established that Miller and Standifer had been on a date that night. Id. At some point, they returned to the home of Benjamin Thomas, where Miller was staying. Id. When Thomas returned home, he found Miller cleaning the basement floor, found streaks of blood inside the house, and later found Standifer’s body in his backyard along with a bloodstained t-shirt belonging to Miller. Id. Miller was arrested and, after waiving his Miranda rights, admitted to hitting Stan-difer with his fist and dragging her outside. Id. On June 11, 1981, Miller was examined by Dr. George Gee, a psychiatrist at the Helen Ross McNabb Mental Health Center. Id. at 694 n.l. In a written evaluation, Gee described Miller as “sociopathic but certainly mentally competent to stand trial.” Id. Miller was subsequently indicted for Standifer’s murder. Id. at 693. The trial court granted Miller’s motion for a second psychiatric examination in order to determine his competency to stand trial. Id. The court instructed Gee to determine both Miller’s mental state at the time of Standi-fer’s death and whether he was currently competent to stand trial. Id. at 693-94. After again examining Miller, Gee issued a letter stating that Miller’s affect and thought processes were normal and that he did not believe Miller was insane at the time of the offense. Id. at 694. Prior to trial, Miller requested that the trial court appoint a psychiatrist to assist in the preparation of his defense. Id. The court denied the motion, finding Miller was not entitled to a second expert. Id. Miller was convicted of first-degree murder and sentenced to death. Id. Miller appealed his conviction and sentence, arguing, in part, that the trial court erred by refusing to provide him with an independent psychiatrist. Id. The Tennessee Supreme Court affirmed Miller’s conviction but remanded the case for resentencing because the State had im-permissibly introduced evidence of prior arrests during the sentencing phase. Id. On remand, Miller renewed his motion for a new trial, arguing that the trial court’s refusal to grant him the assistance of a psychiatric expert during the guilt phase violated his due-process rights in light of the then-recent decision in Alte v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Miller, 694 F.3d at 694-95. The trial court denied the motion without explanation and a second jury sentenced Miller to death. Id. The Tennessee Supreme Court affirmed. Id. Miller’s request for state post-conviction relief was also denied. Miller v. State, 54 S.W.3d 743 (Tenn. 2001). B. In May 2002, Miller filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, raising twenty-five grounds for relief. Miller’s thirteenth claim alleged that he had received ineffective assistance of counsel at resentencing because his attorneys failed to investigate mitigating evidence and failed to retain competent mental-health experts to diagnose Miller and explain how his mental disorders led to Standifer’s death. The district court found this claim procedurally defaulted because Miller had failed to raise it during state post-conviction proceedings and had not shown cause and prejudice to excuse the default. On appeal, we did not consider this IATC claim because there was not a certificate of appealability (COA) on the issue. See Miller, 694 F.3d at 701. We considered only whether denying state funds'for an independent mental-health expert during the guilt phase of Miller’s trial violated Ake v. Oklahoma and whether the jury instructions at trial were proper. Id. at 696-701. Finding no error, we affirmed. Id at 701.[1] C. . In September 2013, Miller filed a motion for relief from judgment under Rule 60(b)(6). He argued that the procedural default of his IATC claim could now be excused under Martinez, 566 U.S. at 1, 132 S.Ct. 1309, Trevino, 569 U.S. at 413, 133 S.Ct. 1911, and Hodges v. Colson, 727 F.3d 517 (6th Cir. 2013), because he had presented a substantial claim of ineffective assistance of trial counsel, because post-conviction counsel was ineffective for failing to raise this claim, and because the balance of equities favored a federal merits-based review of his claim. The district court denied Miller’s motion, finding that he had not shown sufficient extraordinary circumstances to merit relief. The district court first recognized that our decision in McGuire v. Warden, Chillicothe Correctional Institution, 738 F.3d 741, 750 (6th Cir. 2013), established that Martinez and Trevino, alone, do not constitute extraordinary circumstances for the purposes of Rule 60(b)(6). The court noted that Martinez and Trevino did not change the constitutional rights of criminal defendants but rather impacted access to federal statutory relief. The district court then considered whether other equitable factors, on bal-anee, favored Miller’s request for Rule 60(b)(6) relief. First, the district court recognized that although Miller had presented new evidence in the affidavit submitted by John Halstead, Miller’s post-conviction counsel, the affidavit of Mark Olive, Miller’s counsel at resentencing, was substantially similar , to the testimony Olive had previously presented in connection with Miller’s § 2254 petition. Second, the court held that policy considerations, including the finality of judgments, did not weigh in Miller’s favor. Third, the district court concluded that Miller had not been diligent in pursuing relief because he had not raised his Martinez claim for eighteen months— from the time Martinez was decided in March 2012 until Miller filed his Rule 60(b)(6) motion in September 2013. Considering these factors together, the district court concluded that Rule 60(b)(6) relief was inappropriate. Alternatively, the court held thát even if Rule 60(b)(6) relief was appropriate, Martinez and Trevino still did not excuse the default of Miller’s IATC claim because he had not put forward a “substantial claim” of ineffective assistance. The court noted that Olive, as trial counsel, was objectively reasonable in investigating and presenting Miller’s background despite the fact that he did not renew his request for funds to hire a psychological expert. It also held that Olive could not be blamed for failing to persuade a series of state courts to provide Miller an expert. The court did not reach the question of prejudice. Miller was granted a COA as to whether, in light of Martinez and Trevino, he had demonstrated extraordinary circumstances meriting Rule 60(b)(6) relief. Miller now appeals. II. Federal Rule of Civil Procedure 60(b)(6) is a “catchall provision” providing relief from a final judgment for any reason not otherwise captured & Rule 60(b). West v. Carpenter, 790 F.3d 693, 696-97 (6th Cir. 2015) (citing McGuire, 738 F.3d at 760). Rule 60(b)(6) applies only in “exceptional ' or extraordinary circumstances where principles of equity mandate relief,” id., but such circumstances “rarely occur” in the habeasContext. Sheppard v. Robinson, 807 F.3d 815, 820 (6th Cir. 2015) (quoting Gonzalez v. Crosby, 545 U.S. 524, 535, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005)). Rule- 60(b)(6) motions necessitate “a case-by-case inquiry” in which the district court “intensively balance[s] numerous factors, including the competing policies of the finality of judgments and the incessant command of the court’s conscience "that justice be done in light of all the facts.” West, 790 F.3d at 697 (quoting McGuire, 738 F.3d at 750). These factors can include “the risk of injustice to the parties” as well as “the risk of undermining the public’s confidence in the judicial process.” Buck v. Davis, —— U.S. -, 137 S.Ct. 759, 778, 197 L.Ed.2d 1 (2017) (citation omitted). We review the denial of a Rule 60(b) motion for an abuse of discretion. West, 790 F.3d at 697. In the Rule 60(b)(6) context, this discretion is “especially broad due to the underlying equitable principles involved.” Id. (citing Tyler v. Anderson, 749 F.3d 499, 509 (6th Cir. 2014)). ' III. As a general rule, there is no constitutional right to an attorney in state post-conviction, proceedings. Coleman v. Thompson, 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Consequently,- a petitioner generally cannot claim ineffective assistance of post-conviction counsel during federal habeas review to excuse the procedural default of claims not raised in state court. Id. The Supreme Court, however, carved out a “narrow exception” to this rule, allowing a prisoner to show cause to excuse an otherwise-defaulted IATC claim. Martinez, 566 U.S. at 9, 132 S.Ct. 1309. To qualify for this exception, a petitioner must present a substantial IATC claim, show that state law required him to bring the IATC claim during an initial-review post-conviction proceeding, and show that he received either no assistance or ineffective assistance during that initial state post-conviction proceeding. Id. at 14, 132 S.Ct. 1309. Trevino expanded this exception to situations where there was no meaningful opportunity to present the IATC claim on direct appeal. 569 U.S. at 413, 133 S.Ct. 1911. Although ‘we initially suggested that Martinez did not apply in Tennessee, see Hodges v. Colson, 711 F.3d 589, 612 (6th Cir. 2013), amended by 727 F.3d 517 (6th Cir. 2013), we have since recognized that Martinez and Trevino apply in the state, see Sutton v. Carpenter, 745 F.3d 787, 795 (6th Cir. 2014). The applicability of this exception, however, does not necessarily result in the availability of Rule 60(b)(6) relief. We have consistently held that Martinez and Trevino, as intervening decisions, do not alone “sufficiently change[].the balance,of the, factors for consideration -under Rule 60(b)(6) to warrant relief.” Henness v. Bagley, 766 F.3d 550, 557 (6th Cir. 2014); see also Abdur’Rahman v. Carpenter, 805 F.3d 710, 714 (6th Cir. 2015); Wright v. Warden, Riverbend Maximum Sec. Inst., 793 F.3d 670, 672 (6th Cir. 2015). This is because we do not interpret Martinez and Trevino as “a-change in the constitutional rights of criminal defendants, but rather [as] an. adjustment of an equitable ruling ... as to when federal statutory relief is available.” McGuire, 738 F.3d at 750-51. Such a change in decisional law “is usually not, by itself, an extraordinary circumstance meriting Rule 60(b)(6) relief.” Id. at 750 (quoting Stokes v. Williams, 475 F.3d 732, 735 (6th Cir. 2007) (internal quotation marks and citation omitted)). The district court thus correctly recognized , that. Martínez and Trevino are not enough and proceeded to consider Miller’s other arguments in equity. We will do the same. ' IV. Miller maintains that, in addition to Martinez and Trevino, he has shown extraordinary circumstances warranting Rule 60(b)(6) relief because (1) he was diligent in pursuing Rule 60(b)(6) relief; (2) he has a substantial life interest in avoiding the death penalty; (3) the finality interest is diminished here because his IATC claim has not yet been litigated on the merits in either state or federal court; and (4) he has presented a substantial IATC claim. The district court rejected these arguments, finding that Miller was not diligent, giving considerable weight to the finality of judgments, and holding that his IATC claim was not substantial.[2] As we discuss below, the district court did not abuse its discretion in weighing these equitable interests and concluding that Miller’s equitable arguments failed to show extraordinary circumstances warranting Rule 60(b)(6) relief. A. A Rule 60(b)(6) motion must be made “within a reasonable time.” Fed. R. Civ.- P. 60(c)(1). This is a fact-specific determination. Tyler, 749 F.3d at 510. We evaluate reasonableness' by considering a petitioner’s diligence in seeking relief. See Sheppard, 807 F.3d at 821; Wright, 793 F.3d at 672. In situations similar to Miller’s, we examine the time between the date'of the decision constituting a-change in the law and the date that the Rule 60(b)(6) motion was filed. See Gonzalez, 545 U.S. at 536-37, 125 S.Ct. 2641 (finding an eight-month delay was not diligent); Wright, 793 F.3d at 672 (noting that a Rule 60(b) motion was diligently filed when done within twelve months of Martinez). We also look to whether the petitioner raised the issue in his petition for rehearing or for Supreme Court review. See Sheppard, 807 F.3d at 821 (finding a.petitioner was not diligent when Martinez could have been, but was not, raised in a certiorari petition); see also Gonzalez, 545 U.S. at 537, 125 S.Ct. 2641 (finding a petitioner was not diligent when he did not raise the- issue in either his rehearing or certiorari petition). The Supreme Court decided Martinez on March 20, 2012, 566 U.S. at 1,132 S.Ct. 1309. At that point, we had heard argument on Miller’s § 2254 petition but had yet to issue a decision. See Miller, 694 F.3d at 691. Miller did not bring Martinez to our attention prior to our decision on September 13, 2012, nor did he raise the issue in his petition for rehearing. Id. And when Miller sought Supreme Court review of his § 2254 petition on March 21, 2013, he made no argument with respect to Martinez. On March 26, 2013, we decided Hodges v. Colson, which suggested that Martinez did not apply in Tennessee. 711 F.3d at 612. On May 28, 2013, the Supreme Court decided Trevino, which expanded the Martinez exception. Trevino, 569 U.S. at 413, 133 S.Ct. 1911. That same day, the Court denied Miller’s petition for a writ of certiorari, making the dismissal of his § 2254 petition final. On August 14, 2013, we amended Hodges such that it no longer decided the question of Martinez’s applicability to Tennessee prisoners.[3] Compare Hodges, 711 F.3d at 612, with Hodges, 727 F.3d at 540. Miller filed his Rule 60(b)(6) motion on September 20, 2013. The district court held that Miller was not diligent because eighteen months had elapsed between the time Martinez was decided and his Rule 60(b)(6) motion. The district court looked to Smith v. Colson, 566 U.S. 901, 132 S.Ct. 1790, 182 L.Ed.2d 611 (2012) (Mem.), where a similarly situated prisoner had argued for Martinez relief in his certiorari petition, to suggest that Miller could have done the same. Additionally, the district court looked to the Supreme Court’s decision in Ryan v. Schad, 570 U.S. 521, n.2, 133 S.Ct. 2548, 186 L.Ed.2d 644 (2013) (per curiam), which it interpreted to disapprove of a four-month delay in seeking to vacate a judgment under Martinez. On appeal, Miller relies heavily on the argument that he was precluded from seeking relief under Martinez and-Trevino until our original decision in Hodges was amended in August 2014, and thus, he was diligent in pursuing relief because he filed his Rule 60(b)(6) motion within six weeks of Hodges being amended. We find this argument unpersuasive. First, it ignores the fact that Miller could have, but did not, challenge the procedural default of his IATC claim in the twelve months between the time Martinez was decided (March 2012) and the point at which we first decided Hodges (March 2013). Second, nothing prevented Miller from immediately seeking Rule 60(b)(6) relief after Trevino was decided—a case that necessarily called into question our initial decision in Hodges. Even if we accepted the proposition that Hodges initially provided a valid bar, we would not extend that bar past the point at which Trevino was decided in May 2013. We cannot excuse Miller’s failure to challenge the procedural default of his IATC claim for more than sixteen months—the twelve months between Martinez and Hodges and the four months between Trevino and his Rule 60(b)(6) motion. Miller has gone beyond the eight-month delay that constituted a lack of diligence in Gonzalez, 545 U.S. at 537, 125 S.Ct. 2641, and the twelve-month delay that we accepted as diligent in Wright, 793 F.3d at 672. Furthermore, Miller failed to raise Martinez in his certiorari petition, a fact we previously found dispositive on the question of diligence. Sheppard, 807 F.3d at 821. On these facts, we cannot say that Miller was diligent in pursuing relief under Martinez. B. There is no question that Tennessee has an interest in the finality of its judgments. Wright, 793 F.3d at 672. And even in cases involving the death penalty, we must afford “profound respect” to the finality interests stemming from our prior decision denying habeas relief. Sheppard, 807 F.3d at 821 (citing Calderon v. Thompson, 523 U.S. 538, 556, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998)). However, we still must balance these interests against the Supreme Court’s admonition that “[c]on-ventional notions of finality ... have no place where life or liberty is at stake and infringement of constitutional rights is alleged,” Sanders v. United States, 373 U.S. 1, 8, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); see also Wright, 793 F.3d at 673; Thompson v. Bell, 580 F.3d 423, 444 (6th Cir. 2009), and our recognition that finality interests must be considered in concert with the “more irreversible finality of [Miller’s] execution.” Wright, 793 F.3d at 673 (quoting Thompson, 580 F.3d at 444). The state and federal courts have provided Miller with considerable opportunities for review. Miller was tried, convicted, and sentenced to death in 1982. See State v. Miller, 674 S.W.2d 279, 280 (Tenn. 1984). His conviction and sentence were reviewed on direct appeal by the Tennessee Supx’eme' Court, which affirmed his conviction but remanded his case for re-sentencing. Id. at 284. After he was again sentenced to death, the Tennessee Supreme Court affirmed and the United States Supreme Court denied his petition for a writ of certiorari. State v. Miller, 771 S.W.2d 401 (Tenn. 1989), cert. denied, 497 U.S. 1031, 110 S.Ct. 3292, 111 L.Ed.2d 801 (1990). Miller also had the opportunity to seek state post-conviction relief. See Miller v. State, No. 03C01-9805-CR-00188, 1999 WL 1046415 (Tenn. Crim. App. Nov. 19, 1999). The Tennessee Supreme Court denied his request for post-conviction relief and the Ú.S. Supreme Court again declined to grant his certiorari petition. Miller v. State, 54 S.W.3d 743 (Tenn. 2001), cert. denied, 536 U.S. 927, 122 S.Ct. 2598, 153 L.Ed.2d 785 (2002). Miller then raised twenty-five claims for relief on federal ha-beas review, the dismissal of which we affirmed on appeal. See Miller, 694 F.3d at 693. Again, in May 2013, the Supreme Court declined to review Miller’s case when it denied his petition for a writ of certiorari on the § 2254 petition. See Miller v. Colson, 569 U.S. 1007, 133 S.Ct. 2739, 186 L.Ed.2d 197 (2013) (Mem.). Miller argues that despite this procedural history, he has not had an opportunity to litigate his IATC claim on the merits in the course of his federal habeas proceedings. It is difficult to dispute this point given that- the district court refused to consider his IATC claim on the grounds that it was procedurally defaulted. We refuse to accept, however, that this alone outweighs the finality interests at stake when Miller had the opportunity to challenge the procedural default of his IATC claim before his habeas judgment became final but failed to do so. Similarly, we cannot say that Miller’s interest in avoiding the death penalty is, by itself, enough to overcome the finality interests at stake. See Sheppard, 807 F.3d at 821. Because neither of Miller’s proposed interests overcomes the state and judicial interests in finality and because those finality interests are strengthened given -the extended history of this case, we agree with the district court that the balance of these interests does not favor Rule 60(b)(6) relief in this case. C. Although the district court did consider the merits of Miller’s IATC claim in response to Miller’s pending motion, it is unclear whether the court was determining only that Miller had not presented a “substantial” IATC claim as required by Martinez, or whether it was evaluating the merits of Miller’s underlying claim as an equitable factor weighing for or against Rule 60(b)(6) relief. On appeal, Miller argues that the strength of his IATC claim is an equitable factor that we must consider in determining whether Rule 60(b)(6) relief is appropriate. In doing so, he relies on the Supreme Court’s recent decision in Buck, 137 S.Ct. at 775-80, our decision in Wright, 793 F.3d at 673, and a recent Third Circuit decision, Cox v. Horn, 757 F.3d 113, 124-25 (3d Cir. 2014). 1. As an initial matter, we are hesitant -to agree that Buck, Wright, and Cox necessarily require us to consider the merits of Miller’s IATC claim. Although the Supreme Court, in deciding Buck, considered the merits of the petitioner’s ineffective-assistance-of-counsel claim, it did so because one issue before the Court was the substantive question as to whether the petitioner had received ineffective assistance. Buck, 137 S.Ct. at 775.. When the Court considered whether the petitioner had established extraordinary circumstances under Rule 60(b)(6), it looked to only three factors: (1) that Buck “may have been sentenced to death in part because of his race,” which would have punished him on the basis of an immutable characteristic; (2) that the state had conceded error and had consented to resentencing in similarly situated cases; and (3) that the state had a competing finality interest. Id. at. 777-79. Contrary to Miller’s argument on appeal, the Buck Court did not consider the merits of the ineffective-assistance claim for the purposes of Rule 60(b)(6), nor did it assign greater weight to the change in the law because of the substantiality of that claim. Instead,, it was focused on the injection of race into the sentencing determination, the state’s actions in similar cases, and nptions of finality. Miller is correct that we have previously considered the merits of the underlying ineffective-assistance claim in .deciding whether a district court erred in denying Rule 60(b)(6) relief. See Wright, 793 F.3d at 673. In that case, we credited the petitioner for being diligent in pursuing relief, but held that his diligence was outweighed by state and judicial interests in the finality of judgments. Id. at 672-73. We also noted that the weakness of the underlying ineffective-assistance claim was, “important” in finding that the equities weighed against reopening the case. Id. at 673. Similarly, the Third Circuit has said it was “appropriate” to consider the merits of the underlying claim because “[a] court need not provide a remedy under 60(b)(6) for claims of dubious merit that only weakly establish ineffective assistance.... ” Cox, 757 F.3d at 124-25. Because Rule 60(b)(6) determinations are fact-specific and require “a case-by-case inquiry,” West, 790 F.3d at 697 (citation omitted), we cannot, say that we must, as a matter of course, consider the merits of Miller’s IATC claim simply because it was appropriate to do so in Wright and Cox. However, we will assume it is appropriate in this case and proceed to evaluate Miller’s IATC claim for the purpose of considering whether it changes the balance of equities with respect to his Rule 60(b)(6) motion. 2. In his habeas petition, Miller argued that Olive was constitutionally ineffective at resentencing for “failing] to retain competent mental health professionals with the skill and knowledge to diagnose [Miller’s] mental disorders and/or disturbances ... or to explain how those disturbances led to ... Standifer’s death,” which left the re-sentencing .jury “uninformed ... regarding an important statutory mitigating factor” and without a “scientific explanation for [Miller’s] otherwise incomprehensible acts.” DE 18, Page ID 89; JA 22. In his Rule 60(b)(6) motion, Miller restates this claim more broadly as Olive’s “failure to present compelling evidence that Miller’s actions ... were directly attributable to his profound mental illness at the time of the offense and that his mental illness was directly attributable to the almost unspeakable physical and sexual trauma he suffered as a child, and/or organic brain damage.” DE 112, Page ID 486; CA6 R. 12, at 27-28. Miller now faults Olive for both failing to call an expert and failing to “fully” or “adequately investigate” Miller’s background and history of trauma. DE 112, Page ID 489, At oral argument, Miller clarified that this claim is grounded in Olive’s failure to request any expert assistance at resentencing. Miller argues that this was deficient performance because there was no strategic justification or excuse for Olive not to have pursued all reasonably available mitigating evidence. And that it was prejudicial because expert testimony would have allowed him to present a “far different story” to the resen-tencing jury that would have explained the “bizarre aspects” of the murder and resulted in at least one juror voting against the death penalty. CA6 R. 12, at 33. 3. To demonstrate that his counsel was constitutionally ineffective, Miller must show that “(1) his counsel’s performance was deficient, that is, objectively unreasonable under prevailing professional norms, and (2) it prejudiced his defense.” Cornwell v. Bradshaw, 559 F.3d 398, 405 (6th Cir. 2009) (citing Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In considering the deficiency prong, we “indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance” and attempt “to eliminate the distorting effects of hindsight.” Strickland, 466 U.S. at 689, 104 S.Ct. 2052. However, the “failure to reasonably investigate the defendant’s background and present mitigating evidence to the jury at sentencing can constitute ineffective assistance of .counsel.” Goodwin v. Johnson, 632 F.3d 301, 318 (6th Cir. 2011) (citing Wiggins v. Smith, 539 U.S. 510, 521-22, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). In making ■this determination, we focus “on whether the investigation supporting counsel’s decision not to introduce mitigating evidence ■.,. was itself reasonablé.” Clark v. Mitchell, 425 F.3d 270, 284 (6th Cir. 2005) (citation omitted). This turns on both “the quantum of evidence known to counsel ... as well as whether that evidence should have led a reasonable attorney to investigate further.” Id. Choices “made after less than a complete investigation are reasonable precisely to the extent that a reasonable professional judgment supported the limitations on the investigation.” Goodwin, 632 F.3d at 318-19 (quoting Wiggins, 539 U.S. at 528, 123 S.Ct. 2527). Such choices include whether to present expert testimony at the penalty phase. See Jackson v. Bradshaw, 681 F.3d 753, 771 (6th Cir. 2012); see also Hartman v. Bagley, 492 F.3d 347, 360 (6th Cir. 2007) (“[CJounsel might quite reasonably have made a strategic decision to present [an expert’s report as to] mitigation findings through the more sympathetic lens of family members’ testimony,”). We cannot excuse Olive’s failure to engage any expert in support of Miller’s case for mitigation, Olive does not claim, and the record does not indicate, that the court would have refused access to a neutral expert, such as Gee, for the purposes of resentencing. The record indicates that Olive had notice of how expert testimony could have helped Miller’s case at the penalty phase. His pre-trial investigation uncovered evidence of physical abuse, sexual abuse, abandonment, and neglect. He also learned of numerous instances of Miller suffering severe head trauma, hearing voices, and experiencing blackouts. Prior to resentencing, Olive obtained additional social-services and educational records providing further evidence that Miller had suffered physical and sexual abuse. This evidence suggested that Miller may have been suffering from a head injury, mental defect, or mental disease. But Olive chose not to consult with any expert to further investigate Miller’s condition or present testimony connecting Miller’s background and condition with Standifer’s murder, evidence that would have been consistent with the theory of mitigation Olive presented. Instead, Olive presented Miller’s background, evidence of abuse, and the theory that Miller may have suffered an adolescent head injury through lay testimony. Olive framed this to the resentencing jury as a non-statutory mitigating factor. He also requested, and received, the following statutory mitigating instruction at resen-tencing: The capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was subsequently impaired as a result of mental disease or defect or intoxication which was insufficient to establish a defense to the crime but which substantially affected his judgment.[4] App. 109; Supp. App. 98. But Olive made these decisions without consulting—or even requesting to consult with—an expert to understand what testimony, if any, such an expert could provide or whether there was something more to investigate with respect to Miller’s mental health. This leads us to seriously question the reasonableness of Olive’s investigation at resen-tencing. See Goodwin, 632 F.3d at 318. Had Olive consulted with an expert, or even requested the opportunity to do so, and then declined to present expert testimony, we would be much more likely to say that such a decision was objectively reasonable. Indeed, our past decisions suggest that establishing deficiency is considerably more difficult when counsel has made an informed decision regarding mitigation after consulting with experts. See Landrum v. Mitchell, 625 F.3d 905, 931-32 (6th Cir. 2010) (counsel was not deficient when, after completing a thorough investigation and obtaining a court-appointed expert, he made the “strategic decision not to present [the expert’s] underdeveloped testimony”); Hartman, 492 F.3d at 359-60 (counsel was reasonable in declining to present expert testimony after consulting with a forensic psychologist and deciding to present the psychologist’s findings “through the more sympathetic lens” of the defendant’s family members); Broom v. Mitchell, 441 F.3d 392, 410 (6th Cir. 2006) (counsel was not objectively unreasonable because he had “attempted to obtain psychological testimony as well as the services of a mitigation expert” as part of a broader investigation); Campbell v. Coyle, 260 F.3d 531, 555 (6th Cir. 2001) (counsel’s failure to detect defendant’s mental disorder was reasonable because he had relied on the evaluation of a psychologist). Even if Olive’s performance was deficient, Miller must still show prejudice to succeed on his IATC claim. This presents a much more difficult hurdle for Miller. In the context of a death-penalty proceeding, the Supreme Court defines prejudice as “a reasonable probability that, absent the errors, the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.” Strickland, 466 U.S. at 695, 104 S.Ct. 2052. Prejudice from the deficient investigation or presentation of mitigating evidence requires “new evidence” that “differ[s] in a substantial way—in strength and subject matter— from the evidence actually presented at sentencing.” Clark, 425 F.3d at 286 (quoting Hill v. Mitchell, 400 F.3d 308, 319 (6th Cir. 2005)). We then “reweigh the evidence in aggravation against the totality of available mitigating evidence, both that adduced at trial and that adduced in post-conviction proceedings.” Goodwin, 632 F.3d at 327. In order to find prejudice, we must assume that the expert called to testify would have presented new evidence that favored mitigation. See Clark, 425 F.3d at 286. To do so, we start with the evidence that Olive did present in his case for mitigation at resentencing. Olive presented a theory of mitigation focused on Miller’s background. This included testimony from Miller’s mother about the absence of Miller’s biological father, her struggle with alcoholism, and the physical abuse Miller suffered at the hands of his stepfather— including a serious untreated head injury. Olive also presented testimony that Miller had been seriously injured while he was in foster care and that he had been subject to sexual abuse as a young adult. In its summation, the State attempted to minimize the strength of testimony and argument as to how Miller’s age, upbringing, and intoxication—from both alcohol and LSD—constituted sufficient factors to preclude .the death penalty. Finally, the jury was explicitly instructed to consider whether Miller’s capacity and impairment by way of mental disease, mental defect, or intoxication substantially affected his judgment. On federal habeas review, Miller presented declarations from three expert witnesses in the areas of psychiatry, psychology, and neurology. Pablo Stewart, a clinical and forensic psychiatrist, expressed his opinion that Miller developed Posttraumatic Stress Disorder and severe depression as a result of his childhood and adolescence and that Miller suffered from auditory and visual hallucinations around the time of Standifer’s murder, as well as other “clear symptoms of psychosis and dissociation.” App. 53. Stewart concluded that Miller suffered from “multiple neurocogni-tive disorders.” App. 54. Thomas Hyde, a neurology expert, opined that Miller’s behavior was “consistent with developmental or acquired frontal lobe dysfunction” that could have been a result of traumatic head injury and would have impacted his ability to control his impulses and manage his anger. Hyde Deck, App. 61. David Lisak, a clinical psychologist, stated that Miller’s alcohol and drug use stemmed from his history of psychological trauma and physical abuse. Lisak also opined that Miller’s behavior during Standifer’s murder was consistent with “an outburst of unbridled rage and aggression” that could be associated with heavy alcohol and drug use.[5] Lisak Deck, App. 85. Miller continues to cite these reports as the new evidence in support of his claim that Olive was constitutionally ineffective. Although we recognize that the conclusions offered by Miller’s post-conviction experts were not presented at resentencing, the reports are not evidence that is substantially different in strength and subject matter from what Olive presented at re-sentencing. See Clark, 425 F.3d at 286-87. Olive “presented most of the same facts that the .post-conviction mitigation witnesses said should have been presented." Landrum, 625 F.3d at 932-33 (finding that expert testimony drawing conclusions from a defendant’s troubled upbringing did not “differ[ ] significantly both in strength and subject matter from the evidence actually presented at sentencing”); see also Hartman, 492 F.3d at 360-61 (finding post-conviction expert testimony was not new when compared to mitigation evidence provided exclusively from lay witnesses). Olive’s theory of mitigation encompassed Miller’s neglect and abuse as a child, the possibility that he suffered a traumatic head injury, and his drug and alcohol use around the time of Standifer’s murder. Although Olive used lay witnesses to do so, he presented the same facts that now underlie the evidence Miller claims is new. Thus, we question whether Miller can succeed in'establishing the prejudice prong of his IATC claim. Finally, even if we were to credit Miller’s evidence and assume that an expert would have presented similarly favorable testimony, we would still have to find that the evidence sufficiently changed the balance such that at least one juror would have voted against death. See Tenn. Code Ann. § 39-13-204(i). Because we have sufficient concerns with Miller’s ability to establish new evidence, we decline to engage in such balancing here. ⅜ ⅜ ‡ Given our uncertainty as to Miller’s ability to establish prejudice, we cannot agree that his IATC claim is “unquestionably meritorious.” Nor can we say that he has presented such a clear case of ineffective assistance that it overcomes the other relevant equitable factors weighing against Rule 60(b)(6) relief, especially Miller’s lack of diligence in raising his Martinez claim—a factor to which we have previously given considerable weight. See Sheppard, 807 F.3d at 821. Thus, in light of the Supreme Court’s instruction that extraordinary ■ circumstances are rare in the habeas context, Gonzalez, 545 U.S. at 535, 125 S.Ct. 2641, and the “especially broad” discretion we must give to the district court in this context, West, 790 F.3d at 697, we conclude that the district court did not abuse its discretion in finding that Miller failed to establish extraordinary circumstances under Rule 60(b)(6). We therefore affirm the district court’s denial of Miller’s request for Rule 60(b)(6) relief.[6] V. For the foregoing reasons, we affirm the denial of Miller’s Rule 60(b)(6) motion. DISSENT . We note, at the outset, that the Supreme Court’s recent decision in McWilliams v. Dunn, — U.S. -, 137 S.Ct. 1790, 198 L.Ed.2d 341 (2017), held that Ake clearly established a defendant’s right to an independent expert. Although this may be relevant to Miller's habeas claim regarding the denial of state funds for an independent health expert during the guilt phase of his trial, it does not impact our decision here that the district court properly denied Miller’s request for Rule 60(b)(6) relief as to his IATC claim. . The district court also considered whether the affidavits from both trial and post-conviction counsel presented new evidence related to his IATC claim. It concluded that the affidavit from trial counsel did not present ány new evidence and that the affidavit from post-conviction counsel, although new, addressed only the deficiencies in Miller's post-conviction representation and not the underlying IATC claim, For this reason, it does not appear that the district court considered the affidavits to weigh in favor of finding extraordinary circumstances. Because Miller. does not challenge this determination on appeal, we do not consider it here. . We did not explicitly determine that Martinez and Trevino applied in Tennessee until March 19, 2014, when we decided Sutton, 745 F.3d at 792. . Although the resentencing court agreed to the instruction, it did note that it was "difficult to see” evidence in the record to support such an instruction. App. 109. . Although we adopt these conclusions here for the purposes of evaluating Miller’s claim of new evidence, we question whether a neutral, court-appointed expert would have reached such conclusions given Gee’s testimony at trial that Miller was neither insane nor incompetent. . If Miller had shown extraordinary circumstances entitling him to Rule 60(b)(6) relief, he would still need to show that his underlying IATC claim was.a "substantial'' one and , that he had received ineffective assistance of counsel during'his initial post-conviction proceedings in order to show that he was eligible for consideration on the merits. See Martinez, 566 U.S. at 14, 132 S.Ct. 1309; Trevino, 569 U.S. at 429, 133 S.Ct. 1911. Because we conclude that .the district court was within its discretion, in denying Miller Rule 60(b)(6) relief, we need not reach these questions.